In the Matter of the ADOPTION OF J.L.H., Jr., and J.P.H., Minors.

D.K.H., Appellant,

v.

J.L.H. and B.A.H., Appellees.

No. 63524.

Supreme Court of Oklahoma.

April 14, 1987.

---

Randy Witzke, Messrs. Huckaby, Fleming, Frailey, Chaffin & Darrah, Chickasha, for appellant.

Richard E. Koenig, Messrs. Ferguson, Horn & Lawson, Chickasha, for appellees.

OPALA, Justice.

The issues for disposition on certiorari are: [1] Is Oklahoma a constitutionally sanctioned forum state for the exercise of judicial cognizance to declare minor children—bona fide residents of this state—eligible for adoption by their domiciliary father and stepmother without the consent of the noncustodial natural mother, a nonresident who claims to have had no minimum contacts with Oklahoma? and [2] Does the record, when measured by the fundamental law's clear-and-convincing-evidence test, establish the children's eligibility for a consentless adoption grounded on the mother's willful failure to support them? We answer the first question in the affirmative and the second in the negative.

Two children were born to D.K.H. [mother] and J.L.H. [father] before their 1979 Kansas divorce. The decree gave their custody to the mother and specifically required the father to pay child support. Later the decree was modified to place custody with the father but no monetary obligation was imposed upon the mother. In short, she remained free of any court-decreed support responsibility. The father subsequently remarried and moved his family to Oklahoma.

In March of 1984 the father (joined by B.A.H., the stepmother) sought a judicial determination of his children's eligibility for adoption without the consent of their natural mother. This claim for relief was grounded on the natural mother's allegedly willful failure to provide child support—within the meaning of 10 O.S. 1981 § 60.-6(3)[1]—for a full year last preceding the filing of the adoption case.

The mother *appeared specially* and objected to the trial court's in personam and subject-matter jurisdiction but her challenge met with an adverse ruling. After hearing testimony the trial court found that, because the mother had willfully and intentionally neglected to contribute to the children's support, they became eligible for adoption without her consent by force of § 60.6(3)(b).

The Court of Appeals reversed that decision and held that the trial court (a) was without in personam jurisdiction of the natural mother because she did not have minimum contacts with Oklahoma as required by the federal fundamental law's doctrine of *International Shoe v. State of Washington*[2] and (b) lacked authority to proceed with the adoption without the natural mother's consent. The father and stepmother now seek our review by certiorari.

## I

## THE JURISDICTION OF THE TRIAL COURT

The father, stepmother and the two minor children are domiciliaries of Grady County, Oklahoma, the forensic situs of the adoption case. Under the applicable legal norms of the forum state, 10 O.S. 1981 § 60.4,[3] venue was properly laid and the trial court did have subject-matter jurisdiction to entertain the proceeding under review.[4] 10 O.S. 1981 § 60.2.

---

1. See footnote 5 *infra* for the pertinent text of § 60.6(3)(b).

2. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 [1945]; see also footnote 11 *infra*.

3. The terms of 10 O.S. 1981 § 60.4 provide: "Proceedings for adoption must be brought in the district court, or any specially created court having jurisdiction in the county where the petitioners reside."
It is undenied that the adoption petitioners are bona fide residents of Grady County.

4. The terms of 10 O.S. 1981 § 60.2 provide: "Any child present within this state at the time the petition for adoption is filed, irrespective of place of birth or place of residence, may be adopted."

If we were to look to Kansas law for guidance to the proper forum state and to the applicable venue, the governing statute of that state, K.S. 59–2203, provides in pertinent part that
"* * * [p]roceedings by a person seeking to adopt a child shall be had *in the county of the residence of such person if such person is a resident of the state. If such person is a nonresident of the state such proceedings shall be had in the county in which the child to be adopted resides. . . .*" [Emphasis supplied.]
Even under the law of the natural mother's domicile venue in this proceeding was rightly laid in Grady County and the trial court had subject-matter jurisdiction over the adoption claim.

■ The quest for a consentless adoption was rested on the provisions of § 60.-6(3).[5] If their claim were to be considered as governed by the cited section of our adoption law, the petitioners were required to establish by clear and convincing proof that the natural mother willfully had failed to contribute to the children's support for the prescribed period of twelve months next preceding the filing of the adoption case. Whether the noncustodial parent whose consent was deemed unnecessary discharged her support duty presented an issue ancillary to the pending adoption.[6]

The mother relied upon *International Shoe v. State of Washington* to defeat Oklahoma's cognizance.[7] She contended that subjecting her to the jurisdiction of an Oklahoma forum would offend the constitutional fair play component of the Due Process Clause in the XIVth Amendment.

■ Our jurisdictional inquiry would indeed be misdirected if it were focused on the trial court's in personam cognizance of the natural mother. The issue critical to our determination of cognizance is whether Oklahoma affords a constitutionally sanctioned forum to entertain the proffered quest to change the underage children's parental *status* vis-a-vis their nonresident and noncustodial mother.[8] The "bona fide domiciliary" analysis of *Williams v. State of North Carolina*[9] yields a jurisdictional doctrine that is here determinative of Oklahoma's forensic authority to affect the family bond between the resident children and their nonresident natural parent. According to *Williams*, judicial cognizance over *personal status*—be it one created by matrimony or by natural parentage[10]—may be validly exercised by a court of the state in which *only* one party to the

5. The *currently effective* version of 10 O.S.1981 § 60.6 was enacted in the 1986 session (Okl. Sess.L.1986, Ch. 263 § 6, operative July 1, 1986). The terms of *the then-effective* text of 10 O.S. 1981 § 60.6 provided in pertinent part:
   "A legitimate child cannot be adopted without the consent of its parents, if living ... except that consent is not necessary from a father or mother:
   3. Who, for a period of twelve (12) months next preceding the filing of a petition for adoption of a child, has willfully failed, refused or neglected to contribute to the support of such child:
   a. in a substantial compliance with a support provision contained in a decree of divorce, ... or orders of modification subsequent thereto, ... or
   b. according to such parent's financial ability to contribute to such child's support if no provision for support is provided in a decree of divorce or an order of modification subsequent thereto; * * *"

6. Both natural parents must consent to their child's adoption by another person. 10 O.S. 1981 §§ 60.5(1) and 60.6. A child may be declared eligible for adoption without the consent of a parent who is judicially found to have willfully failed to support it. 10 O.S.1981 § 60.6. The determination that an adoption may be effected without a parent's consent must be made in an ancillary proceeding anterior to the decree of adoption. In a proceeding for declaration of the child's eligibility to be adopted without a parent's consent, the burden is cast on the adoption petitioner to show by "clear and convincing evidence" that the natural parent, whose consent is to be deemed unnecessary, has failed to meet the obligation for sup-

port. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 [1982] and *Darren Todd H.,* Okl., 615 P.2d 287, 290 [1980].

7. See footnote 2 *supra.*

8. Oklahoma jurisprudence has long viewed a child as a ward of the state. *Allison v. Bryan,* 21 Okl. 557, 97 P. 282, 286 [1908]. The teaching of *Allison* was followed in *Ex Parte Walters,* 92 Okl.Cr. 1, 221 P.2d 659, 667 [1950]. The status of a child *vis-a-vis* its parents is a proper subject for the exercise of cognizance by the courts of the child's domicile. See *Deason v. Jones,* 7 Cal.App.2d 482, 45 P.2d 1025, 1026 [1935] and *Rizo v. Burruel,* 23 Ariz. 137, 202 P. 234 [1921]; see also Restatement (Second) of Conflict of Laws § 78. The text of § 78 is:
   "A state has power to exercise judicial jurisdiction to grant an adoption if
   (a) it is the state of domicil of either the adopted child or the adoptive parent, and
   (b) the adoptive parent and either the adopted child or the person having legal custody of the child are subject to its personal jurisdiction."

9. 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 [1942].

10. While *Williams v. State of North Carolina,* supra note 9, concerns itself with judicial cognizance over the termination of marital status, its reasoning clearly applies to the legal severance of a bond between a child and its parent as well. *Adoption, like divorce, involves a change of status. Rizo v. Burruel, supra* note 8, 202 P. at 237; see e.g., *A. v. M.,* 180 A.2d 541, 548 [N.J.Super. 1962] and 1 Beale, Treatise on the Conflict of Laws, 469 [1935].

status is a bona fide domiciliary while the other party, whose bond is sought to be adversely affected by the litigation, is a resident of a foreign jurisdiction.[11] The teaching of *Williams* has never been questioned by the subsequent emergence of the so-called minimum contacts doctrine.[12] That doctrine was fashioned to gauge the standards of due process for the exercise of jurisdiction to render an in personam judgment against one not served within the state—a form of forensic cognizance that is not implicated in this case because here *no* personal judgment is sought against the Kansas mother.[13]

■ A quest for a consentless adoption must, of course, always conform to the procedural requirements of due process. Because the natural mother had ample notice of the Oklahoma proceeding and was afforded sufficient opportunity to appear and defend against the attempted judicial extinguishment of her consent power, the minimum standards of fundamental fairness in the Due Process Clause were adequately met. In short, due process was not offended by the procedure used to hale her into the Oklahoma forum.[14]

■ We hold that, inasmuch as the children to be adopted are bona fide residents of this state and their *residence status* is free from legal cloud, the trial court was not without subject-matter cognizance to

11. Oklahoma has long been in faithful compliance with the federal doctrine that a nondomiciliary, who has *no* minimum contacts to the state for the occurrence or transaction in suit, may not be sued in this state for an in personam judgment. See *B.K. Sweeney Co. v. Colorado Interstate Gas Co.*, Okl., 429 P.2d 759 [1967]. Before the emergence of the minimum contacts doctrine, in *Williams v. State of North Carolina, supra* note 9, the U.S. Supreme Court allowed a state to exercise judicial jurisdiction over *personal status* when only one of the parties sharing the status was a bona fide domiciliary of the forum state. The later-announced minimum contacts gauge of state in personam jurisdiction neither enlarged or abridged the existing norms of state cognizance over *personal status.* The *Williams* analysis clearly authorizes a state to exercise cognizance over the personal status of a nondomiciliary party if the *sub judice* status has a sufficient relationship to the state. See also Restatement (Second) of Judgments § 7, *infra* note 13.

Although *Shaffer v. Heitner*, 433 U.S. 186, 207, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683 [1977], articulates the parameters for the exercise of judicial jurisdiction over property (*in rem*), it explicitly refrains from ruling on the fairness of *in rem* standards in cases brought to adjudicate the personal status of an individual. In *Shaffer* at 433 U.S. 208, 97 S.Ct. at 2582, the Court said: "It appears, therefore, that jurisdiction over many types of actions which now are or might be brought *in rem* would not be affected by a holding that any assertion of state-court jurisdiction must satisfy the *International Shoe* standard." In footnote 30 of the opinion, 433 U.S. at 208, 97 S.Ct. at 2582, the Court further elucidated: "... We do not suggest that jurisdictional doctrines other than those discussed in [the] text, such as the particularized rules governing adjudications of status, are inconsistent with the standard of fairness."

12. See *Sherrer v. Sherrer*, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 [1948]; *Coe v. Coe*, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451 [1948] and *Kreiger v. Kreiger*, 334 U.S. 555, 68 S.Ct. 1221, 92 L.Ed. 1572 [1948].

13. The case *sub judice* can be readily distinguished from *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 [1978]. In *Kulko* the forum state was attempting to hale the defendant-father from his home in New York into a distant California court for modification of his child support obligation—a classical form of court-imposed obligation that requires in personam jurisdiction of the defendant. In the present case no money judgment is sought against the natural mother; instead, Oklahoma's cognizance is invoked to settle the status of her minor children who are bona fide domiciliaries of the forum state. See Restatement (Second) of Judgments § 7. The text of § 7 is:

"A state may exercise jurisdiction to establish or terminate a status if the status has a sufficient relationship to the state. Relationships sufficient to support exercises of such jurisdiction in matters of family status are stated in Restatement, Second, Conflict of Laws §§ 70–79."

In sum, *Kulko* is distinguishable because it deals with jurisdiction to enforce liability arising from status rather than with determination of status.

14. *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62 [1965] and *Stubbs v. Hammond*, 257 Iowa 1071, 135 N.W.2d 540, 543 [1965]. See also Restatement (Second) of Conflicts of Laws § 69. The text of § 69 is:

"A state may not exercise judicial jurisdiction over the status of a person unless a reasonable method is employed to give him notice of the action and unless he is afforded a reasonable opportunity to be heard."

affect their personal status vis-a-vis the nondomiciliary natural parent.[15]

## II

### THE FATHER'S (AND STEPMOTHER'S) PROOF TO ESTABLISH THE NATURAL MOTHER'S ALLEGEDLY WILLFUL NONSUPPORT FAILS TO MEET THE FUNDAMENTAL LAW'S CLEAR-AND-CONVINCING-EVIDENCE STANDARD

Assuming without deciding that the norms of Oklahoma law are applicable here to measure the legal support obligation owed by this nonresident and noncustodial parent, the issue before us is whether the proof adduced to establish that the natural mother had willfully failed to support the children according to her financial ability is sufficient to show the children eligible for a consentless adoption. We hold that the record fails to meet the requisite clear-and-convincing-evidence standard.

■ Oklahoma law requires a noncustodial parent to support his child according to the terms of a court order[16] or, absent such provisions, in a manner commensurate with one's financial ability.[17] An unadjudicated, status-based duty of support may be discharged in non-monetary form if the contribution made is used or usable for the child's necessary living expenses such as food, clothing, medical care or insurance. Failure to provide the required support for the year last preceding the filing of the case may result in a judicial declaration that the child is eligible for a consentless adoption.[18]

■ A parent who is financially unable to provide for the support of his child and who has not voluntarily placed himself in a disabling position to avoid legal responsibility is not within the class of persons whose power to consent is judicially extinguishable. Excusable disability factors were found to be present in *Matter of Adoption of V.A.J.*[19] There, the respondent-father, a prisoner serving a life sentence, was earning a monthly salary of $25. His support contributions consisted of non-monetary gifts. We held that he did not willfully place himself under disability to avoid meeting his support obligation.

■ For a part of the critical period—the year next preceding the filing of the adoption proceeding—the mother in this case was a public charge upon the State of Kansas. Her income for that year was far below the level of bare subsistence. Yet during the time her financial outlook was the bleakest, she managed to send gifts to all the children in the custodial father's household—her own as well as those of the second wife. One can hardly say that the mother placed herself in an impoverished and disabled condition to avoid meeting her support obligation.[20] In short, the proof does not disclose that her modest gifts were incommensurate with her ability to discharge the Oklahoma-imposed support requirements. We hence find that the record does not meet the law's high standard of evidentiary support required for the judicial declaration sought here by the father and stepmother.[21]

Because we have determined that under the applicable legal norms the mother's bond to the children was not severable without her consent, we need not decide here whether the law of the mother's domicile—where the divorce was granted and

---

**15.** Our view would not be the same if the father had brought the children to Oklahoma illegally or under a legal cloud. If that were so, the children could not be considered bona fide residents of Oklahoma and hence would not be within the ambit of the *Williams* doctrine.

**16.** 10 O.S.1981 § 60.6(3)(a), *supra* note 5, and *Matter of Adoption of C.M.G.*, Okl., 656 P.2d 262 [1982].

**17.** 10 O.S.1981 § 60.6(3)(b), supra note 5, and *Matter of Adoption of C.M.G.*, *supra* note 16.

**18.** *Matter of Adoption of C.M.G.*, *supra* note 16.

**19.** Okl., 660 P.2d 139 [1983].

**20.** See *Matter of Adoption of V.A.J.*, *supra* note 19.

**21.** *Santosky v. Kramer, supra* note 6, and *Matter of Adoption of Darren Todd H., supra* note 6.

the custody of the children was later reposed in the father—ought to provide the gauge for measuring her support duty. This choice-of-law question, which bears here some unmistakable Full-Faith-and-Credit overtones, must accordingly be saved for another day.[22]

On certiorari previously granted, the Court of Appeals' opinion is vacated and the trial court's order is reversed with directions to declare the children ineligible for adoption without their natural mother's consent.

DOOLIN, C.J., and HODGES, KAUGER and SUMMERS, JJ., concur.

SIMMS and WILSON, JJ., concur in judgment.

HARGRAVE, V.C.J., and LAVENDER, J., dissent.

SIMMS, Justice, concurring:

I join in the Court's judgment; however I cannot concur in that portion of the majority opinion which holds that Oklahoma's exercise of in personam jurisdiction over this nonresident mother is justified and constitutionally permissible. The Court of Appeals decision was correct and should be affirmed.

This is not an action brought by the state to protect the safety and well-being of a child in danger within our boundaries. Different issues would be present if it were.

The mother did not have sufficient minimum contacts with Oklahoma to support requiring her to defend this attack on her parental rights in this private interparental litigation under 10 O.S. 1981 § 60.6.

Under these circumstances, the exercise of personal jurisdiction in the absence of minimum contacts offends traditional notions of fair play and substantial justice.

See: *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed 95 (1945); *Kulko v. California Supreme Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Yery v. Yery,* Okl., 629 P.2d 357 (1981); *Perdue v. Saied,* Okl., 566 P.2d 1168 (1977); *Dunn v. Dunn,* Okl. App., 550 P.2d 1369 (1976).

I cannot agree with the majority that *Williams v. North Carolina,* 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed 279 (1942) is even applicable here, let alone controlling.

It seems clear to me that correct resolution of the choice-of-law issues here would require holding that Kansas law must govern. Kansas is clearly the state with the most significant relationship to the parties.

I do agree with the majority that under Oklahoma law, the evidence here was plainly insufficient to support severance of this maternal bond.

---

**22.** The mother contended below that, because she was a Kansas resident, the outer limit of her support duty is to be measured by the law of that state. She asserted that Oklahoma cannot impair the terms of the Kansas decree nor may it require her, as a nonresident and noncustodial parent, to conform to Oklahoma's support norms. Because the divorce decree was rendered in Kansas and that state conferred upon her the status of a noncustodial parent, she took

the position that Kansas had the most significant relation to her conduct. See *Yarborough v. Yarborough,* 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269, 90 ALR 924 [1933]. In *Yarborough,* where a child sought severance of the father's bond, the Court held that the character and extent of the father's support obligation and the status of the minor vis-a-vis the father were both to be governed by the law of the father's domicile.