STATE of Iowa, Appellee,

v.

William Glenn BELLOWS, Appellant.

No. 98–636.

Supreme Court of Iowa.

June 3, 1999.

Jerald W. Kinnamon of Kinnamon, Kinnamon, Russo & Meyer, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, J. Patrick White, County Attorney, and Anne Lahey, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

LARSON, Justice.

William Bellows was found guilty and sentenced for stalking in violation of Iowa Code sections 708.11(2) and 708.11(3)(b)(1) (1995). We affirm.

## I. *The Facts.*

We recite the facts as the court, which was sitting without a jury, could reasonably have found them. Bellows and his girlfriend, Sue Cardwell, lived together in Illinois until Bellows' abuse and harassment became so intense that Cardwell moved out and attempted to sever the relationship. Cardwell obtained a protective order in an Illinois court. The issue in this appeal is what legal significance Iowa is to give to the Illinois protective order. That order, entered on January 12, 1995, was admitted into evidence without objection. It prohibited Bellows from contacting, harassing, or abusing Cardwell in any manner for two years.

The protective order did not deter Bellows, so Cardwell moved to various shelters and friends' homes to avoid contact with him. One friend and a two-year old child of the friend were in Cardwell's car in February 1995. Bellows tailgated the car and bumped into it several times. Illinois prosecutors charged Bellows with stalking, based largely on that event, and he was found guilty of a lesser offense of violating the protective order. Bellows was again ordered to have no contact with Cardwell as a condition of his probation. Cardwell moved to a domestic violence shelter in Iowa City in April 1995. Bellows followed her to Iowa, harassing her in Clinton and in Davenport, before March 14, 1996. On that date, Cardwell was staying with a friend, Debra McCall in Coralville. Bellows knocked on the door, and Cardwell started to answer but ran to the bedroom when she recognized Bellows. Bellows walked in without permission. McCall repeatedly asked Bellows to leave and threatened to call the police, which she did. Bellows left just before the police arrived. The police advised Cardwell to leave McCall's residence and to get an Iowa civil protection order. The next morning, as Cardwell was leaving for the courthouse to get the order, Bellows pulled up in a different car. McCall called the police, who arrested Bellows. During a search of Bellows' vehicle, the police found, among other items, handcuffs, binoculars, an Iowa City map, a fake police badge, and a paper with Cardwell's name, license

plate number, and directions to McCall's residence. (Bellows had used handcuffs during his sexual and physical abuse of Cardwell, and he used binoculars to watch Cardwell at a protection center. He had also impersonated an officer to get information about Cardwell's whereabouts.)

The Johnson County attorney charged Bellows with stalking in violation of Iowa Code section 708.11(2) and alleged that the stalking was elevated to a class "D" felony under Iowa Code section 708.11(3)(b)(1) because Bellows violated the Illinois protective order. Bellows was convicted and sentenced to a term not to exceed five years.

## II. *The Issues.*

Bellows raises four issues: (1) the court's failure to dismiss the case, (2) its refusal to grant his motion for judgment of acquittal, (3) its imposition of an illegal sentence, and (4) the denial of effective assistance of counsel. Most of the issues turn on Bellows' major premise: that the Illinois protective order had no legal effect in Iowa. This in turn depends on our interpretation of our stalking statute.

## III. *The Stalking Statute.*

■ Our statute provides:

2. A person commits stalking when all of the following occur:

*a.* The person purposefully engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily injury to, or the death of, that specific person or a member of the specific person's immediate family.

*b.* The person has knowledge or should have knowledge that the specific person will be placed in reasonable fear of bodily injury to, or the death of, that specific person or a member of the specific person's immediate family by the course of conduct.

*c.* The person's course of conduct induces fear in the specific person of bodi-ly injury to, or the death of, the specific person or a member of the specific person's immediate family.

Iowa Code § 708.11(2). The district court found these elements were proven. It also found that Bellows violated the Illinois protective order, and this elevated Bellows' offense to a class "D" felony under section 708.11(3):

*b.* A person who commits stalking in violation of this section commits a class "D" felony if any of the following apply:

(1) The person commits stalking in violation of a criminal or civil protective order or injunction, or any other court order.

Bellows contends the Iowa trial information should have been dismissed, arguing that the State was required to file the Illinois protective order in Johnson County, Iowa, before the district court could consider it. Section 626A.2 (the registration statute) provides:

A copy of a foreign judgment authenticated in accordance with an Act of Congress or the statutes of this state *may* be filed in the office of the clerk of the district court of a county of this state which would have venue if the original action was being commenced in this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the district court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of the district court of this state and may be enforced or satisfied in like manner.

(Emphasis added.) He also relies on section 236.19:

2. A copy of a foreign protective order authenticated in accordance with the statutes of this state *may* be filed with the clerk of the district court of the county in which the person in whose favor the order was entered resides.

The clerk shall provide copies of the order as required by section 236.5.

3. A foreign protective order so filed has the same effect and shall be enforced in the same manner as a protective order issued in this state.

Iowa Code § 236.19 (Supp.1995) (emphasis added).

The State responds that (1) Iowa should accord full faith and credit to the Illinois order under the United States Constitution and 18 U.S.C. § 2265 (1994) (providing for full faith and credit to protective orders), regardless of whether it was filed in Iowa; and (2) even if the Illinois protective order did not have legal effect in Iowa, the State satisfied the elements of the charge by proving Bellows violated the order partially in Illinois and partially in Iowa.

Here, the court found:

1. On or about March 15, 1998, Mr. Bellows purposely engaged in a course of conduct directed at Ms. Cardwell that would cause a reasonable person to fear bodily injury or her death.

2. That Mr. Bellows knew or should have known that Ms. Cardwell would be placed in reasonable fear of bodily injury or death.

3. That his course of conduct induced fear in Ms. Cardwell of bodily injury or death.

Thus, the court found that Bellows' acts in Johnson County violated Iowa's stalking statute and the Illinois protective order as well. Bellows' violation of the Illinois order subjected him to an enhanced penalty because he had acted "in violation of a criminal or civil protective order or injunction, or any other court order," under section 708.11(3)(b)(1). (Other aggravating circumstances, not involved here, include stalking while armed and stalking a person under eighteen years of age. *See* Iowa Code §§ 708.11(3)(b)(2), (3)).

■ We consider convictions from other jurisdictions to enhance punishment for violations of other Iowa criminal laws. For example, Iowa Code section 901A.2(5) (1999), with respect to punishment for a sexually predatory offense, provides:

In determining whether a conviction is a first or second conviction under this subsection, a prior conviction for a criminal offense committed in another jurisdiction which would constitute a violation of [an Iowa statute] if committed in this state, shall be considered a conviction under this subsection.

Also, in license revocation cases, our statute provides for enhancement of penalties based on foreign offenses:

For the purpose of determining if a violation charged is a second, third, or subsequent offense ... convictions or the equivalent of deferred judgments for violations in any other states under statutes substantially corresponding to this section shall be counted as previous offenses. The courts shall judicially notice the statutes of other states which define offenses substantially equivalent to the one defined in this section and can therefore be considered corresponding statutes.

Iowa Code § 321J.2(3).

■ These analogous statutes turn on whether a person has been convicted of another offense. The Iowa stalking statute does not require a prior judgment or conviction under a protective order; it only requires that a judge find, in the Iowa proceeding, that the terms of the order had been violated. Iowa Code § 708.11(3)(b)(1). We said recently with respect to enhanced revocation in drivers' licenses cases that

[t]he enhanced punishment prescribed ... is not directed—certainly not entirely—at the cumulative effect of successive affronts to Iowa law. The main focus is on the last offense here in Iowa. We think the legislature called for the enhancement because, notwithstanding ample experience, the accused simply was not getting the point. This interpretation promotes the legislative pur-

pose of section 321J.4(3), which is to protect the public by removing repeat-offenders from our roadways.

*State v. O'Malley,* 593 N.W.2d 517, 519 (Iowa 1999).

Likewise, enhancing the penalty for violation of a foreign protective order promotes one of the goals of the legislature in enacting the stalking statute. A study by our Domestic Abuse Task Force, which prompted this stalking legislation stated:

> No sound policy reason exists for protecting the survivor only in the state in which she obtained the order. Future violence ought to be constrained in any state in which the victim is located.

Final Report of the Supreme Court's Task Force on Courts' and Communities' Response to Domestic Abuse, at 63 (1994).

Because we consider the Illinois protective order only with respect to punishment for an offense committed in Iowa, we do not purport to enforce the order itself. Therefore, we need not consider whether we should grant full faith and credit to the Illinois order or require registration of it before we give effect to it. We hold that the Iowa district court had jurisdiction to try this offense, and it properly denied the motion to dismiss.

### IV. *Sufficiency of the Evidence.*

Bellows argues that his motion for judgment of acquittal should have been sustained as to any offense above a misdemeanor because the violation of an Illinois order could not apply, for the reasons urged in his motion to dismiss. He argues that the order from another state could not be the basis of a criminal action in Iowa. We reject this argument for the reasons discussed in Division III.

### V. *Legality of the Sentence.*

■ Bellows argues his sentence was illegal under Iowa Rule of Criminal Procedure 23(5). His due process rights were violated, according to him, by the enforcement of the Illinois order. We reject that

argument as well; the Iowa court used Bellows' violations to enhance the penalty, but it did not purport to enforce the Illinois order itself. The sentence based on the aggravating circumstance of a violation of a protective order is prescribed by statute and is not illegal.

### VI. *Ineffective–Assistance Claim.*

■ Bellows complains that his trial counsel was ineffective because he failed to present a defense that Bellows had relied on advice from his Illinois lawyer. His lawyer, he contends, told Bellows the Illinois protective order would have no effect outside the state. Under our law,

> [a]ll persons are presumed to know the law. Evidence of an accused person's ignorance or mistake as to a matter of either fact or law shall be admissible in any case where it shall tend to prove the existence or nonexistence of some *element* of the crime with which the person is charged.

Iowa Code § 701.6 (emphasis added). It is "[o]nly in rare circumstances when the legislature has made knowledge of criminality an element of the offense charged." *Saadiq v. State,* 387 N.W.2d 315, 323 (Iowa 1986). The lack of subjective awareness that conduct is unlawful is not generally a defense. *State v. Clark,* 346 N.W.2d 510, 513 (Iowa 1984). Our stalking statute does not contain an element that Bellows stalked Cardwell with the specific intent to violate a protective order. *See State v. Buchanan,* 549 N.W.2d 291, 294 (Iowa 1996) (noting the term "specific intent" is used to " 'designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime' ") (quoting Wayne R. LaFave & Austin W. Scott, Jr., *Handbook on Criminal Law* § 28, at 192 (1972)). Because section 708.11(3)(b)(1) does not require specific intent to violate the Illinois order, any ignorance or mistake of law was irrelevant. Bellows' counsel had no duty to raise this defense.

We find no error in the trial court proceeding.

**AFFIRMED.**