LARSON, Justice.
Nathan Bartsch, a nonresident of Iowa, appeared specially in an Iowa domestic-abuse case under Iowa Code chapter 236 (1999) to challenge the court’s personal jurisdiction over him. The court agreed it did not have personal jurisdiction but concluded that, for purposes of entering a protective order under chapter 236, personal jurisdiction was not required. The court also denied Nathan’s motion to dismiss based on forum non conveniens. We agree and therefore affirm.

I.Facts and Prior Proceedings.

Tara Bartsch filed an application for a protective order against Nathan Bartsch in Jones County District Court in November 1999. Tara was a resident of Iowa, and Nathan was apparently a resident of Colorado. (He has asserted residency in both Utah and Colorado.) They were married but separated. Their daughter, Morgan, was less than a year old when Tara moved to Iowa to live with her parents in October 1999. While both Nathan and Tara had early ties to Iowa, they moved to Utah in 1994 and lived there until December 1997, when they moved to Texas. Approximately a year later, they moved back to Utah and continued to live there until October 1999, when Tara moved to Iowa. She lived in Iowa at the time she filed her application for a protective order on November 12, 1999. The court entered a temporary protective order on that date. See Iowa Code § 236.4. By that time, Nathan says he had moved to Colorado, where he was served with notice of Tara’s application for a protective order. He immediately challenged the order by a motion to dismiss. The court denied his motion.
II. Standard of Review.
Our scope of review on a motion to dismiss is well established.
“The trial court’s findings of fact have the effect of a jury verdict and are subject to challenge only if not supported by substantial evidence in the record; we are not bound, however, by the trial court’s application of legal principles or its conclusions of law.”
Percival v. Bankers Trust Co., 450 N.W.2d 860, 861 (Iowa 1990) (quoting State ex rel. Miller v. Internal Energy Mgmt. Corp., 324 N.W.2d 707, 709-10 (Iowa 1982)).
III. Personal Jurisdiction.
The district court found that the defendant did not have sufficient minimum contacts for personal jurisdiction, but personal jurisdiction was not required. The defendant challenges the district court’s exercise of jurisdiction as “contrary to Iowa case law regarding the necessity of a find *6 ing of both subject matter jurisdiction and personal jurisdiction in order to exercise jurisdiction over the case.” The plaintiff seems to concede the need for personal jurisdiction but contends it is “inconceivable” that defendant lacks sufficient minimum contacts.
We believe the district court’s finding of insufficient contacts for personal jurisdiction is supported by substantial evidence, and we reject Tara’s argument to the contrary. While both parties were born in Iowa, lived here most of their lives, and were married here, they moved to Utah in 1994 immediately after their marriage, and Nathan currently lives in Colorado. Despite the fact Nathan maintained substantial ties to Iowa prior to 1994, he has had virtually no ties to Iowa since that time, except that his wife and child now live here.
Nevertheless, we affirm the legal conclusion by the district court that, under these circumstances, personal jurisdiction over a nonresident defendant is not required for a court to enter an order preserving the protected status afforded Iowa residents under chapter 236. See State v. Vincik, 436 N.W.2d 350, 354 (Iowa 1989) (court’s ruling “will be upheld if sustainable on any grounds appearing in the record”). The district court’s ruling does not purport to grant affirmative relief against the defendant; it merely preserves the protected status accorded to the plaintiff by chapter 236.
In other situations it is clear personal jurisdiction is not necessary to satisfy the demands of the Due Process Clause. For example,
[t]he Supreme Court has held that personal jurisdiction over a nonresident spouse is not necessary to dissolve a marriage because it is a status determination. Traditionally, child custody determinations have also been exempt from the personal jurisdiction requirement. The original drafters of the [Uniform Child Custody Jurisdiction Act] stated that custody determinations were status exceptions and exempt from the personal jurisdiction requirement.
Anthony A. Dorland, Case Note, Hughs ex rel. Praul v. Cole, 572 N.W.2d 747 (Minn.Ct.App.1997), 25 Wm. Mitchell L.Rev. 965, 988-89 (1999) (citations omitted). As early as Pennoyer v. Neff, the Supreme Court recognized that not all exercises of a state’s subject matter jurisdiction require personal jurisdiction of a defendant. The Court stated:
The jurisdiction which every State possesses, to determine the civil status and capacities of all its inhabitants involves authority to prescribe the conditions on which proceedings affecting them may be commenced and carried on within its territory. The State, for example, has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved. One of the parties guilty of acts for which, by the law of the State, a dissolution may be granted, may have removed to a State where no dissolution is permitted. The complaining party would, therefore, fail if a divorce were sought in the state of the defendant; and if application could not be made to the tribunals of the complainant’s domicile in such case, ... the injured citizen would be without redress.
Pennoyer v. Neff, 95 U.S. 714, 734-35, 24 L.Ed. 565, 573 (1877). (emphasis added).
This concept is reflected in the Restatement of Conflict of Laws, which recognizes that an adjudication of status does not *7 require personal jurisdiction. The Restatement illustrates the point:
A leaves his home in State X and goes to State Y, where he becomes domiciled and there obtains an ex parte divorce from B, his wife. Assuming that the requirements of proper notice and of opportunity to be heard have been met, this divorce is valid and must be recognized in X under full faith and credit even though B was not personally subject to the jurisdiction of the Y court and at all times retained her domicile in X.
Restatement (Second) of Conflict of Laws § 71 cmt. a, illus. 1, at 219 (1971). Thus, marriage-dissolution actions, insofar as they affect the status of marriages, do not require personal jurisdiction of the defendant.
Domicile creates a relationship to the state which is adequate for numerous exercises of state power. Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders. The marriage relation creates problems of large social importance. Protection of offspring, property interests, and the enforcement of marital responsibilities are but a few of commanding problems in the field of domestic relations with which the state must deal. Thus it is plain that each state by virtue of its command over its domiciliaries and its large interest in the institutions of marriage can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent. There is no constitutional barrier if the form and nature of the substituted service meet the requirements of due process.
Williams v. North Carolina, 317 U.S. 287, 298-99, 63 S.Ct. 207, 213, 87 L.Ed. 279, 286 (1942) (emphasis added) (citations omitted). Iowa Code chapter 236 clearly creates a status of “protection” under the reasoning of Williams. In fact, we have said “chapter 236 is protective rather than punitive.” Christenson v. Christenson, 472 N.W.2d 279, 280 (Iowa 1991).
The recognition in Williams that the “protection of offspring” is a state concern overriding the need for personal jurisdiction underlies the general rule that a state may make custody adjudications without personal jurisdiction of the defendant. See Unif. Child Custody Jurisdiction Act § 12 cmt. (1999) (“There is no requirement for technical personal jurisdiction, on the traditional theory that custody determinations, as distinguished from support actions, are proceedings in rem or proceedings affecting status.” (citation omitted)); In re Marriage of Torres, 62 Cal.App.4th 1367, 73 Cal.Rptr.2d 344, 352 (1998); In re Paternity of Robinaugh, 616 N.E.2d 409, 411 (Ind.Ct.App.1993) (“Custody proceedings are adjudications of status, and as such are an exception to the minimum contacts requirements normally associated with discussions of personal jurisdiction.”); Hudson v. Hudson, 35 Wash.App. 822, 670 P.2d 287, 293 (1983); see also Iowa Code § 598B.201(3) (Supp.1999) (“Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.”).
The court in Perry v. Ponder, 604 S.W.2d 306 (Tex.Civ.App.1980), explains the rationale of our ruling today:
[A] family relationship may be among those matters concerning which the forum state may have such an interest that its courts may reasonably make an adjudication affecting that relationship, even though one of the parties to the relationship may have had no personal contacts with the forum state.
The reasonableness of such an adjudication is well recognized in divorce cases, in which the status of marriage may be adjudicated at the domicile of *8 one party without establishing any contacts by the nonresident spouse with the state of the forum. See Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942). Custody of children is a status or relationship in which the state has an interest no less than in a marriage.... For these reasons, custody of children has been recognized traditionally as a status which may be determined at the domicile of the child.
Perry, 604 S.W.2d at 314-15.
At least one state has applied, by statute, the jurisdictional provisions of the Uniform Child Custody Jurisdiction Act (UCCJA) (which, as we have already discussed, does not require personal jurisdiction of a defendant) to domestic-abuse cases. See In re Marriage of Los, 229 Ill.App.3d 357, 170 Ill.Dec. 584, 593 N.E.2d 126, 129 (1992); see also Iowa Code § 598B.102(4) (Supp.1999) (new Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) applies specifically to domestic-abuse protection orders). The Minnesota Supreme Court has found no due process problems in a statute allowing ex parte restraining orders in domestic-abuse cases, relying on (1) a state’s strong interest in preventing abuse, (2) the necessity for prompt action, and (3) the protection provided by judicial scrutiny. See Baker v. Baker, 494 N.W.2d 282, 288 (Minn.1992).
The Oklahoma Supreme Court applied the status rationale of Williams in a case involving state court jurisdiction to decide the issue of a noneonsensual stepparent adoption in In re Adoption of J.L.H., 737 P.2d 915 (Okla.1987). In that case, the children's natural father and stepmother petitioned in Oklahoma for the nonconsen-sual adoption of the father’s children on the ground their mother, a nonresident of Oklahoma, had willfully failed to pay child support. Two issues were raised on appeal: whether the district court had jurisdiction and whether the plaintiffs had proved their claim of willful nonpayment. J.L.H., 737 P.2d at 917-20. The Oklahoma court concluded the district court had jurisdiction of the case, but rejected the petition on its merits. Id. at 918-21.
The Oklahoma court rejected the nonresident’s argument that the minimum contacts requirement of International Shoe v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), prevented the court’s exercise of jurisdiction:
[T]he so-called minimum contacts doctrine ... was fashioned to gauge the standards of due process for the exercise of jurisdiction to render an in per-sonam judgment against one not served within the state — a form of forensic cognizance that is not implicated in this case because here no personal judgment is sought against the Kansas mother.
J.L.H., 737 P.2d at 919 (footnote omitted); see also In re Marriage of Kimura, 471 N.W.2d 869, 875 (Iowa 1991) (divisible divorce doctrine recognizes when court does not have personal jurisdiction over absent spouse it still has “jurisdiction to grant a divorce to one domiciled in the state but no jurisdiction to adjudicate the incidents of the marriage, for example, alimony and property division”).
A Texas court explained the distinction between adjudications affecting family relationships and those requiring personal jurisdiction:
Unlike adjudications of child support and visitation expense, custody determinations are status adjudications not dependent upon personal jurisdiction over the parents. Generally, a family relationship is among those matters in which the forum state has such a strong interest that its courts may reasonably make an adjudication affecting that re *9 lationship even though one of the parties to the relationship may have had no personal contacts with the forum state.
In re S.A.V., 837 S.W.2d 80, 84 (Tex.1992) (emphasis added) (citations omitted).
The greater and more immediate risk of harm from domestic violence, as opposed to the “ ‘considerable interest in preventing bigamous marriages and in protecting the offspring in marriages from being [illegitimate]’ ” in dissolution proceedings, see Kimura, 471 N.W.2d at 875 (quoting Estin v. Estin, 334 U.S. 541, 546, 68 S.Ct. 1213, 1217, 92 L.Ed. 1561, 1567 (1948)), makes application of the status exception to protective orders even more compelling than in dissolution actions. Indeed, the State’s interest in protecting victims of domestic abuse is equal to, if not greater than, its interest in actions determining child custody or terminating parental rights because it involves the safety of the protected parties. If the State can make adjudications without personal jurisdiction over a nonresident parent in custody determinations in which it has a strong state interest, it also has that right in domestic-abuse protection actions in which it has an even stronger interest.
The interstate nature of many abusive relationships, and the concomitant need for protection extending beyond the borders of a particular state was discussed by us, under analogous facts, in State v. Bellows, 596 N.W.2d 509 (Iowa 1999). “Future violence ought to be constrained in any state in which the victim is located.” Bellows, 596 N.W.2d at 513. Our domestic-abuse statute evidences a special solicitude for potential abuse victims. It allows a petition to be filed without payment of costs, Iowa Code § 236.3(7); forms are provided for pro se filing, Iowa Code § 236.3A(2); and the county attorney may assist the plaintiff in all stages of the proceeding, Iowa Code § 236.3B.
It is true that due process requires, in status determinations as well as others, reasonable attempts to notify the defendant and a reasonable opportunity to defend. The Oklahoma court in J.L.H. acknowledged that “[a] quest for a con-sentless adoption must, of course, always conform to the procedural requirements of due process.” Nevertheless,
the natural mother had ample notice of the Oklahoma proceeding and was afforded sufficient opportunity to appear and defend against the attempted judicial extinguishments of her consent power, the minimum standards of fundamental fairness in the Due Process Clause were adequately met. In short, due process was not offended by the procedure used to hale her into the Oklahoma forum.
737 P.2d at 919; see also Hudson, 670 P.2d at 293. These requirements were satisfied in this case. Nathan was served notice in his home state, and he appeared at the hearing through counsel to challenge the court’s jurisdiction.
The protected status established by our statute is sufficient to justify the district court in exercising jurisdiction. However, this defendant suggests that the plaintiff should be required to go to the state of Utah (where, apparently, neither of the parties now resides), get a protective order, then transfer it to Iowa. See Iowa Code § 236.19 (registration of foreign protective orders). This would be a cumbersome and time-consuming procedure that is not required by the Constitution and is not even consistent with common sense. A court in a state where none of the parties resided would be unlikely to become involved in view of the doctrine of forum non conveniens and issues of subject matter jurisdiction.
*10 The order here does not attempt to impose a personal judgment against the defendant. See J.L.H., 737 P.2d at 919 n. 13 (“Kulko [v. Superior Court of California, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978),] is distinguishable [from a case in which no money judgment is sought] because it deals with jurisdiction to enforce liability arising from status rather than with determination of status.”). The district court merely ordered the defendant to “stay away from the protected party” and not assault or communicate with her, in furtherance of the State’s strong interest in protecting Iowa residents from domestic abuse. If a court may constitutionally make orders affecting marriage, custody, and parental rights without personal jurisdiction of a defendant, it certainly should be able to do what the court did here- — enter an order protecting a resident Iowa family from abuse.
IV. Forum Non Conveniens.
Nathan contends the district court erred in refusing to dismiss Tara’s action on forum non conveniens grounds. We first discussed this doctrine in detail in Silversmith v. Kenosha Auto Transport, 301 N.W.2d 725 (Iowa 1981). “Forum non conveniens is a facet of venue under which a court can decline to proceed with an action, although venue and jurisdiction are proper.” Silversmith, 301 N.W.2d at 726. Application of the doctrine presupposes at least two forums in which jurisdiction and venue are proper. Douglas Mach. & Eng’g Co. v. Hyflow Blanking Press Corp., 229 N.W.2d 784, 791 (Iowa 1975). The decision as to which forum should hear the case lies in the sound discretion of the trial court. Silversmith, 301 N.W.2d at 728; Restatement (Second) of Conflict of Laws § 84 cmt. b, at 251 (1971).
The mere desire of a party to have a case tried in his or her state of residence is insufficient; nor is it a sufficient ground that the claim arose elsewhere. Silversmith, 301 N.W.2d at 727. With respect to residence, Nathan’s status is unclear. Part of his brief states he is a resident of Utah, for forum non conveniens purposes, but he also states he was a resident of Colorado at the time Tara filed her application. Apparently, the only non-party witness to the event is Tara’s mother, who lives in Iowa. Nathan argues that “[m]ost, if not all, of the evidence regarding the allegations contained in Tara’s application was most easily accessible in the state of Utah, where the parties had resided [at the pertinent time].” However, Tara and her mother both live in Iowa, and if he has moved to Colorado, as he has stated, a Utah venue for the case would be inconvenient for him as well. Further, for the reasons discussed in Division III, Iowa has a significant interest in protecting its residents under chapter 236. A foreign jurisdiction — whether Utah or Colorado— would not have a significant interest in protecting a family that does not even live there. We believe the district court was well within its discretion in refusing to dismiss the case on forum non conveniens grounds.
V. Other Issues.
Nathan complains that the court erred in refusing to vacate its temporary order for child custody and visitation issues, and both parties request an award of appellate attorney fees. We reject the first of these claims because it is moot; the court entered its permanent order, which did not purport to deal with issues of child support or visitation, and at the point the permanent order was entered, the temporary order became ineffective. Any request for attorney fees shall be filed in the district court and ruled on after procedendo has issued.
AFFIRMED.
*11 All justices concur except CARTER, J., LAVORATO, C.J., and TERNUS, J., who dissent.