Derry Family Division
No. 2008-829

MICHELLE HEMENWAY

v.

EDMUND J. HEMENWAY, JR.

Argued: October 8, 2009
Opinion Issued: January 29, 2010

*Nixon, Raiche, Vogelman, Barry & Slawsky, P.A.;* of Manchester (*Kirk C. Simoneau* and *David L. Nixon* on the brief, and *Mr. Simoneau* orally), and *Wendy Guthro*, of Burlington, Massachusetts, on the brief, for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Edmund J. Hemenway, Jr., appeals a final order of protection issued by the Derry Family Division (*Moore,* J.), arguing that the trial court lacked subject matter and personal jurisdiction. We affirm in part and reverse in part and remand.

The record reveals the following facts. The plaintiff, Michelle Hemenway, and the defendant were married and have four children. They had lived together in Florida until July 16, 2008, when the wife left Florida with their children and moved to New Hampshire. They reached a mediated divorce settlement in Florida on May 14, 2009.

At the beginning of August 2008, the wife applied for, and received, a temporary restraining order against her husband in Massachusetts. In late August, the wife filed a domestic violence petition pursuant to RSA chapter 173-B in the Derry Family Division and obtained a temporary restraining order against him. In her petition, the wife alleged that he committed two acts of criminal threatening, to wit, on July 16, 2008, in Florida, he "became verbally abusive and threatened" her and their children, and, on August 2, 2008, he threatened her at her parents' house in Dracut, Massachusetts.

The family division held a hearing on the petition. The husband did not appear but instead through counsel filed a special appearance to contest jurisdiction. The family division found that it had jurisdiction, and concluded that the two incidents constituted criminal threatening and therefore domestic abuse. The family division issued a final protective order prohibiting the husband from threatening or abusing his wife or her family members, contacting her absent special authorization by the family division, coming within a certain distance of her, going to her home or workplace, or taking, converting or damaging her property. The family division also ordered the husband to "relinquish all deadly weapons as defined in RSA 625:11, V which may have been used, intended to be used, threatened to be used, or could be used incident to the abuse," "all

concealed weapons permits and hunting licenses," and prohibited the husband from "purchasing . . . any firearms or ammunition during the pendency of this order." Finally, the family division awarded custody of the children to the wife, and prohibited visitation with the husband pending further hearing. The husband moved to reconsider, which the family division denied. This appeal followed.

The husband argues that the family division lacked subject matter jurisdiction over him because the incidents alleged in the petition occurred in Massachusetts and Florida. He also contends that the family division lacked personal jurisdiction over him under our long-arm statute, RSA 510:4 (1997), and under the Due Process Clause of the Federal Constitution. The wife argues that we should follow other jurisdictions and hold that a protective order that does not impose affirmative obligations on a defendant is valid even absent personal jurisdiction. Alternatively, she argues that the family division had personal jurisdiction over the husband because he flew to Manchester-Boston Regional Airport and, while she was in New Hampshire, made threatening telephone calls and wrote her a threatening letter. She also contends that RSA chapter 173-B, by its plain language, provided subject matter jurisdiction over the petition.

## I. Subject Matter Jurisdiction

We first consider the husband's argument that the family division lacked subject matter jurisdiction. Specifically, he argues that, because RSA 173-B:1 uses the definition of criminal threatening found in the Criminal Code, RSA 173-B:1 also incorporates the territorial jurisdiction restrictions of the Criminal Code. *See* RSA 625:4 (2007) (outlining territorial jurisdiction of Criminal Code); RSA 631:4 (defining criminal threatening). He contends that, had the legislature intended to grant subject matter jurisdiction to the family division over abuse that occurs outside of New Hampshire, it would have done so explicitly. The wife relies upon the plain language of RSA 173-B:2, II.

■ Subject matter jurisdiction is "[j]urisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things." BLACK'S LAW DICTIONARY 931 (9th ed. 2009). In other words, "[s]ubject matter jurisdiction is a tribunal's authority to adjudicate the type of controversy involved in the action." *Shoop v. Kittitas County*, 30 P.3d 529, 532 (Wash. Ct. App. 2001), *aff'd on other grounds*, 65 P.3d 1194 (Wash. 2003). By contrast, "[t]erritorial jurisdiction describes the concept that only when an offense is committed within the boundaries of the court's jurisdictional geographic territory . . . may the case be tried in that state." *West v. State*, 797 A.2d 1278, 1282 (Md.

2002). Absent subject matter jurisdiction, a court order is void. *In the Matter of Goulart & Goulart*, 158 N.H. 328, 332 (2009). A party may challenge subject matter jurisdiction "at any time during the proceeding, including on appeal," and may not waive it. *Close v. Fisette*, 146 N.H. 480, 483 (2001).

To determine whether the family division had subject matter jurisdiction over the wife's petition, we interpret RSA chapter 173-B and RSA 490-D:2, which delineates the jurisdiction of the family division. When undertaking statutory construction, "we first examine the language found in the statute and where possible, we ascribe the plain and ordinary meanings to words used." *Appeal of Garrison Place*, 159 N.H. 539, 542 (2009) (brackets and quotation omitted). "When a statute's language is plain and unambiguous, we need not look beyond [it] for further indications of legislative intent." *Id.* (quotation omitted). "Courts can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include." *Appeal of Astro Spectacular*, 138 N.H. 298, 300 (1994) (quotation omitted). "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." *Residents Defending Their Homes v. Lone Pine Hunters' Club*, 155 N.H. 486, 488 (2007) (quotation omitted).

■ The plain language of RSA 173-B:2, IV and RSA 490-D:2, VI granted subject matter jurisdiction to the family division. RSA 173-B:2, IV states that the family division has "jurisdiction over domestic violence cases." *See* RSA 490-D:2, VI (Supp. 2009) (granting exclusive jurisdiction over "[a]ctions under RSA 173-B, relating to protection of persons from domestic violence except for concurrent jurisdiction with the superior and district courts to enter temporary protective orders under RSA 173-B:4"). RSA 173-B:3, I, provides that "[a]ny person may seek relief pursuant to RSA 173-B:5 by filing a petition, in the county or district where the [wife or husband] resides, alleging abuse by the [husband]." Moreover, a person who "has left the household or premises to avoid further abuse" may "commence proceedings . . . in the county or district where [he or she] temporarily resides." RSA 173-B:2, II. "The fundamental logic of that statutory provision is unassailable: a victim of domestic abuse who seeks a place of refuge must be able to engage the protections of the law of the jurisdiction in which she is sheltered." *Shah v. Shah*, 875 A.2d 931, 937 (N.J. 2005).

■ We disagree with the husband's argument that the family division lacked subject matter jurisdiction because RSA 173-B:1 incorporates the definition of criminal threatening found in RSA 631:4. In light of the purpose of RSA chapter 173-B, and the distinction between proceedings under that chapter and criminal prosecutions, we find that RSA chapter

173-B does not include the territorial jurisdiction limitations of the Criminal Code. "RSA chapter 173-B was enacted with the intent to preserve and protect the safety of the family unit for all family or household members by entitling victims of domestic violence to immediate and effective police protection and judicial relief." *McNair v. McNair*, 151 N.H. 343, 351 (2004) (quotations omitted). Accordingly, RSA 173-B:5, I, permits the family division to "grant such relief as is necessary to bring about a cessation of abuse" where the plaintiff demonstrates by a preponderance of evidence that "the defendant represents a credible threat to [his or her] safety." Because the purpose of such proceedings is to protect the victim from further abuse, and not to punish the abuser, such a finding results in a protective order, but not necessarily a criminal prosecution. As a result, the rules of evidence are relaxed during proceedings under RSA chapter 173-B. *See* RSA 173-B:3, IV. To read RSA 173-B:1 to incorporate the territorial limitations of the Criminal Code would lead to unjust and absurd results, and we decline to do so. *See Lone Pine Hunters' Club*, 155 N.H. at 488.

## II. Personal Jurisdiction

We next consider the husband's argument that the family division lacked personal jurisdiction. "[T]he plaintiff bears the burden of demonstrating facts sufficient to establish personal jurisdiction over the defendant." *Chick v. C & F Enters.*, 156 N.H. 556, 557 (2007) (quotation omitted). We utilize a two-part test to determine whether the wife has met her burden. *Id.* "First, the State's long-arm statute must authorize such jurisdiction. Second, the requirements of the federal Due Process Clause must be satisfied." *Id.* (quotation omitted). Our long-arm statute provides that New Hampshire courts have personal jurisdiction over a non-resident defendant "who, in person or through an agent, transacts any business within the state, commits a tortious act within this state, or has the ownership, use, or possession of any real or personal property situated in this state . . . as to any cause of action arising from or growing out of the acts enumerated above." RSA 510:4, I. "Pursuant to the Federal Due Process Clause, a court may exercise personal jurisdiction over a non-resident [husband] if the [husband] has minimum contacts with the forum, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Vt. Wholesale Bldg. Prods. v. J.W. Jones Lumber Co.*, 154 N.H. 625, 628 (2006) (quotation omitted). "[W]e construe the State's long-arm statute as permitting the exercise of jurisdiction to the extent permissible under the Federal Due Process Clause." *Id.*

We first address the wife's argument that the family division had personal jurisdiction because the husband flew to Manchester-Boston

Regional Airport, made threatening telephone calls and mailed her a threatening letter while she was in New Hampshire. The wife, in her petition, alleged only that the husband threatened her in Florida and Massachusetts, and made no reference to threatening telephone calls or letters in New Hampshire. Although she alleged in the petition that friends warned her that her husband was coming to New Hampshire, the family division struck that allegation. Indeed, the family division correctly prohibited the wife from introducing additional instances of abuse not contained in the domestic violence petition.

■ "[T]he allegations in a domestic violence petition set the contours of the hearing contest." *South v. McCabe*, 156 N.H. 797, 799 (2008) (quotation and brackets omitted). Under RSA 173-B:3, the defendant must "be supplied with the factual allegations against him in advance of the hearing on the petition," and the plaintiff may amend or supplement her domestic violence petition "only if the defendant is provided an opportunity prior to the hearing to respond to the supplemental or amended petition." *Id.* The family division "should not admit evidence on unnoticed charges," and cannot base a finding of domestic abuse on allegations not included in the petition. *Id.* (quotation omitted); *In the Matter of Aldrich & Gauthier*, 156 N.H. 33, 35 (2007); *Comer v. Tracey*, 156 N.H. 241, 246 (2007). Because it would be error to rely on allegations not contained in the petition and considered by the family division, we conclude that, on the record before us, the wife has failed to "demonstrate facts sufficient to establish personal jurisdiction over the defendant." *Chick*, 156 N.H. at 557 (quotation omitted). Therefore, we need not consider "whether the exercise of personal jurisdiction over the [husband] would fall within the minimum contacts standard required by the due process clause of the United States Constitution." *Caplan v. Donovan*, 879 N.E.2d 117, 122 (Mass.), *cert. denied*, 128 S. Ct. 2088 (2008). However, this "conclusion . . . does not end the inquiry." *Id.*

Courts in several states that have considered the validity of a protective order granted without personal jurisdiction over a non-resident defendant have applied an exception to the personal jurisdiction requirement. *See, e.g., Caplan*, 879 N.E.2d at 119; *Bartsch v. Bartsch*, 636 N.W.2d 3, 6 (Iowa 2001). These courts reason that an order that prohibits abuse but does not require affirmative action by a defendant is valid even without personal jurisdiction. *See, e.g., Caplan*, 879 N.E.2d at 119; *Shah*, 875 A.2d at 942. *But see T.L. v. W.L.*, 820 A.2d 506, 514-16 (Del. Fam. Ct. 2003); *Becker v. Johnson*, 937 So. 2d 1128, 1130-31 (Fla. Dist. Ct. App. 2006).

■ In *Pennoyer v. Neff*, 95 U.S. 714, 734-35 (1877), *overruled in part on other grounds by Shaffer v. Heitner*, 433 U.S. 186, 205-06 (1975), the United States Supreme Court stated that:

> The jurisdiction which every State possesses, to determine the civil *status* and capacities of all its inhabitants involves authority to prescribe the conditions on which proceedings affecting them may be commenced and carried on within its territory. The State, for example, has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved. One of the parties guilty of acts for which, by the law of the State, a dissolution may be granted, may have removed to a State where no dissolution is permitted. The complaining party would, therefore, fail if a divorce were sought in the State of the defendant; and if application could not be made to the tribunals of the complainant's domicile in such case, . . . the injured citizen would be without redress.

■ Similarly, in *Williams v. North Carolina*, 317 U.S. 287, 298-99 (1942), the Supreme Court determined that:

> Domicil creates a relationship to the state which is adequate for numerous exercises of state power. Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders. The marriage relation creates problems of large social importance. Protection of offspring, property interests, and the enforcement of marital responsibilities are but a few of commanding problems in the field of domestic relations with which the state must deal. Thus it is plain that each state, by virtue of its command over its domiciliaries and its large interest in the institution of marriage, can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent. There is no constitutional barrier if the form and nature of the substituted service meet the requirements of due process.

(Citations omitted.) Thus, "a court may adjudicate matters involving the status of the relationship between multiple parties even where personal jurisdiction over all of the parties is not established," and "a State court may grant a divorce to a spouse domiciled within that State without violating the due process rights of an absent spouse over whom it does not

have jurisdiction." *Caplan*, 879 N.E.2d at 122; *see Bartsch*, 636 N.W.2d at 9 (noting that child custody determinations are also frequently exempt from personal jurisdiction requirements).

■ A protective order which "prohibits the defendant from abusing the plaintiff and orders him to have no contact with and to stay away from her . . . serves a role analogous to custody or marital determinations, except that the order focuses on the plaintiff's protected status rather than [the plaintiff's] marital or parental status." *Caplan*, 879 N.E.2d at 123; *see also Bartsch*, 636 N.W.2d at 10. Accordingly, an order that prohibits abuse but does not "impose any personal obligations on a defendant" is valid even without personal jurisdiction over the defendant. *Caplan*, 879 N.E.2d at 124; *see Shah*, 875 A.2d at 942; *Bartsch*, 636 N.W.2d at 10; *Spencer v. Spencer*, 191 S.W.3d 14, 19 (Ky. Ct. App. 2006).

A protective order "prohibit[s] acts of domestic violence," providing "the victim with the very protection the law specifically allows," while preventing "the defendant from engaging in behavior already specifically outlawed." *Shah*, 875 A.2d at 939. A contrary ruling would present a domestic violence victim with two "unpalatable choices . . . either to . . . return to the State in which the abuse occurred . . . or, alternatively, to wait for the abuser to follow the victim to [New Hampshire] and, in the event of a new incident of abuse, seek an order from a [New Hampshire] court." *Caplan*, 879 N.E.2d at 123. Such a result is at odds with the purpose of RSA chapter 173-B and New Hampshire's "strong interest in providing protection to victims of domestic violence within this State." *McNair*, 151 N.H. at 351; *see also State v. Kidder*, 150 N.H. 600, 603 (2004) ("It is the public policy of this state to prevent and deter domestic violence through equal enforcement of the criminal laws and the provision of judicial relief for domestic violence victims." (quotation omitted)).

Accordingly, we affirm the family division's final protective order to the extent that it protects the wife from abuse, but reverse to the extent that the order requires affirmative action from the defendant. We remand to allow the trial court to modify its order in accordance with the opinion.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and DALIANIS and CONBOY, JJ., concurred.