Colbert, J.
 

 ¶ 1 The question presented for review is whether the trial court's order declaring M.A.S. eligible for adoption without the biological father's consent, pursuant to
 
 Okla. Stat. tit. 10, § 7505-4.2
 
 (B)(1) and (H)(2011),
 
 [1]
 
 was supported by clear and convincing evidence. We find that it was not.
 

 I. BACKGROUND AND PROCEDURAL HISTORY
 

 A. Bristow Division
 

 ¶ 2 M.A.S. was born on September 27, 2007, to Michael Cruse (Father) and Whitney
 
 *207
 
 Asbell (Mother). The couple never married. By an Agreed Decree of Paternity, Father was declared to be M.A.S.'s natural father on October 31, 2008. The order awarded mother sole custody of M.A.S. and Father unsupervised visitation which Father exercised. Mother later married Stephen Asbell (Stepfather) on May 2, 2009.
 

 ¶ 3 On April 8, 2011, a court ordered Father to pay monthly child support in the amount of $447.91. The court also determined that Father did not owe any past-due child support for the time period of November, 2008 through and including April, 2011. Thereafter, Father tendered monthly payments. But, at times, Father paid less than the full amount owed. Father, however, paid larger sums in the subsequent months.
 

 ¶ 4 On January 8, 2014, Mother sought and obtained an ex parte emergency order that prohibited unsupervised visitation between M.A.S. and Father. On January 13, 2014, the court modified its emergency order to permit Father weekend supervised visitation with M.A.S. upon successfully passing a drug test. However, no overnight visitation would be permitted. Specifically, the order stated:
 

 [I]f the Petitioner test positive for illegal substances then he shall reimburse the Respondent for the cost of the test within five (5) days ... The results of the drug test shall be faxed to Petitioner's ... and Respondent's lawyer ... Petitioner shall submit to the test within 24 hours from this order ...If Petitioner passes his drug test then to have nonovernight visitation to be monitored ... at the Respondent's expense ... [T]ime with the child shall be on Saturdays from 8am to 8pm and Sundays from 8am to 8pm.
 

 ¶ 5 Father filed a motion to modify custody on January 16, 2014. In it, Father disputed the allegations that gave rise to the court's emergency order. Father also asserted that a material change in circumstances had occurred that adversely affected M.A.S.'s best interests. Father sought full custody subject to the granting of "reasonable visitation to the [Mother]." The record is silent regarding the disposition of Father's motion. On March 6, 2014, Father filed a subsequent motion to enforce visitation and requested a hearing. In it, Father alleged full compliance with the court's order; that he successfully passed the drug test; yet, Mother continued to deny Father any contact or visitation with the minor child. The record is also silent concerning the disposition of that motion.
 

 ¶ 6 On April 21, 2014, Mother filed an application for a contempt citation against Father, contending that he failed to pay child support from January through April of 2014. The record is silent concerning the disposition of Mother's application. On April 22, 2014, the proceeding was reassigned to the Honorable Richard Woolery, Creek County Division, "for all further proceedings in this cause."
 
 [2]
 

 B. Adoption Proceeding-Present Appeal
 

 ¶ 7 On January 6, 2015, Stepfather filed an application to adopt M.A.S. without Father's consent in the Sapulpa Division of the Creek County District Court.
 
 [3]
 
 Stepfather alleged that Father had not substantially complied with the court's child-support order and that Father had failed to maintain a substantial and positive relationship with M.A.S. Because of this, Stepfather asserted, Father's
 
 *208
 
 consent is not required in accordance with the terms of Okla. Stat. tit. 10 § 7505-4.2(B)(1) and (H)(2011). Stepfather alleged further that M.A.S. is eligible for adoption without Father's consent and, that it is in M.A.S.'s best interests if Father's rights are terminated. Father denied all allegations contained in the application for adoption without consent.
 

 ¶ 8 The parties stipulate the relevant period for review to be January 6, 2014 to January 6, 2015-the twelve consecutive months of the last fourteen months prior to filing the petition for adoption. The stipulated fourteen-month window was November 6, 2013 to January 6, 2015. According to the Department of Human Services (DHS) record of payments and litigation time line-to which the parties stipulated-Father paid the following amounts during the fourteen month relevant window: November 2013, $440; December 2013, $440; August 2014, $103.36; September 2014, $310.08; and January 2015, $517. In February of 2015, Father made an additional payment of $4,144.44. In all, Father tendered $5,954.88 in support payments.
 

 ¶ 9 The parties appeared before the trial court and submitted their respective briefs on April 6, 2015. By agreement of the parties and in lieu of a hearing, the trial court stated it would rule upon the issues by minute order, which the trial court entered on April 20, 2015. In it, the trial court stated that,
 

 [The Court] has reviewed the briefs and case law submitted by the parties, the agreed upon litigation time line submitted to aid the court, as well as the applicable statutes. The court finds that the Respondent/Natural Father has not substantially complied with a valid child support order within the statutorily contemplated time frame; and the Respondent/Natural Father has not maintained a significant relationship with the child within the statutorily contemplated time frame. The court acknowledges that there may have been some obstacles interposed to make maintaining such a relationship difficult but this court established parameters whereby visitation could occur and the Respondent/Natural Father has not taken advantage of those opportunities, which conduct this court finds to be wilful. Therefore, the Petitioner's application for an order declaring this child to be eligible for adoption without the consent of the Natural Father is sustained.
 

 A subsequent order was issued on August 10, 2015, declaring M.A.S. eligible for adoption without Father's consent. Father appealed and the Court of Civil Appeals, Division II, (COCA) affirmed. Father sought certiorari review which this Court granted.
 

 II. STANDARD OF REVIEW
 

 ¶ 10 A parent's fundamental right to the care, custody, companionship and management of his or her child is a right protected by the United States and Oklahoma Constitutions.
 
 In re Adoption of D.T.H.
 
 ,
 
 1980 OK 119
 
 , ¶ 18,
 
 615 P.2d 287
 
 , 290 (overruled on other grounds). The law presumes that both biological parents must consent before an adoption of their minor child may be effectuated.
 
 In re Adoption of C.D.M.
 
 ,
 
 2001 OK 103
 
 , ¶ 13,
 
 39 P.3d 802
 
 , 807, cert. den.
 
 535 U.S. 1054
 
 ,
 
 122 S.Ct. 1911
 
 ,
 
 152 L.Ed.2d 821
 
 . But, if both parents fail to consent to the adoption of a child, the petitioner must file an application to the court stating the reason that the consent or relinquishment of a parental right is unnecessary.
 
 Okla. Stat. tit. 10, § 7505-4.1
 
 . The Oklahoma Legislature has prescribed certain adoption situations, found at
 
 Okla. Stat. tit. 10, § 7505-4.2
 
 , where prior parental consent is unnecessary, "which effectively terminates that parent's rights."
 
 In re Adoption of C.D.M.
 
 , ¶ 13,
 
 39 P.3d at 807
 
 .
 

 ¶ 11 Adoption statutes in derogation of a biological parent's rights must be strictly construed in favor of the biological parent.
 
 In re Adoption of C.M.G.
 
 ,
 
 1982 OK 156
 
 , ¶ 9,
 
 656 P.2d 262
 
 , 265. The burden rests on the party who seeks to destroy the parent-child bond to establish, by clear and convincing evidence, that an adoption without consent or termination of parental rights is warranted.
 
 In re Adoption of V.A.J.
 
 ,
 
 1983 OK 23
 
 , ¶ 6,
 
 660 P.2d 139
 
 , 141. The requisite "[c]lear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established."
 
 In re C.G.
 
 ,
 
 1981 OK 131
 
 , ¶ 17 n. 12,
 
 637 P.2d 66
 
 , 71 n. 12.
 

 *209
 
 ¶ 12 This Court examines the trial court's conclusion-finding a minor child eligible for adoption without the biological parent's consent-to determine if that conclusion is supported by the clear weight of the requisite clear and convincing evidence.
 
 In re Adoption of R.W.S.
 
 ,
 
 1997 OK 148
 
 , ¶ 10,
 
 951 P.2d 83
 
 , 86 ;
 
 In re Adoption of J.L.H.
 
 ,
 
 1987 OK 25
 
 , ¶ 12,
 
 737 P.2d 915
 
 , 918 ;
 
 In re Adoption of K.P.M.A.
 
 ,
 
 2014 OK 85
 
 , ¶ 13,
 
 341 P.3d 38
 
 , 43. So, unless the trial court's determination rests on clear and convincing evidence, that determination will be reversed.
 
 In re Adoption of C.D.M.
 
 , ¶ 13,
 
 39 P.3d at 807
 
 . This Court examines issues of fact under a "clear and convincing" standard and reviews issues of statutory construction, a matter of law,
 
 de
 

 novo
 
 .
 
 Lang v. Erlanger Tubular Corp.
 
 ,
 
 2009 OK 17
 
 , ¶ 5,
 
 206 P.3d 589
 
 , 590.
 

 III. DISCUSSION
 

 ¶ 13 We note first that the proceedings below were extremely unusual. No evidentiary hearing was held concerning the application for adoption without consent or the child's best interests; and thus, no evidentiary testimony was gathered concerning Father's ability or inability to comply with the court-ordered support obligation during the relevant period. Rather, the parties agreed that the trial judge's ruling would be based solely on the parties' stipulations and briefs. That, it cannot do. Briefs and the references to the proof contained therein do not constitute evidence.
 
 See
 

 Willis v. Sequoyah House, Inc.
 
 ,
 
 2008 OK 87
 
 , ¶ 12,
 
 194 P.3d 1285
 
 , 1290, fn. 14.
 
 [4]
 
 As termination of Father's parental rights are subsumed in Stepfather's application for adoption without consent, an evidentiary hearing is not only warranted, it is mandatory.
 

 ¶ 14 Preadoption proceedings to terminate parental rights must conform to sections 7505-2.1
 
 [5]
 
 and 7505-4.1.
 
 See
 
 7505-4.2. The relevant subsections, 7505-2.1(H) governing
 
 *211
 
 Petitions Terminating Rights of Putative Father and 7505-4.1(G) governing Termination of Parental Rights Without Consent-Process, are virtually identical and mandate that: "A proceeding pursuant to this section for determination of necessity of parental consent or for termination of parental rights shall be
 

 heard
 

 by the court without a jury." § 7505-4.1(G) (emphasis added). We interpret those mandates to mean that the trial judge becomes a trier of fact,
 
 Soldan v. Stone Video
 
 ,
 
 1999 OK 66
 
 , ¶ 6,
 
 988 P.2d 1268
 
 , 1269, and an evidentiary hearing must occur before a trial court may terminate fundamental parental rights and declare the minor child eligible for adoption. In proceedings of this magnitude, it is the trial court's sole prerogative to make specific findings of the ultimate facts as well as conclusions of law upon which the trial court's order is based.
 
 See
 
 §§ 7505-2.1, 7505-4.1 ;
 
 See
 

 also
 
 ,
 
 In re Adoption of K.P.M.A.
 
 ,
 
 2014 OK 85
 
 ,
 
 341 P.3d 38
 
 . For the reasons discussed herein, the trial court's summary proceedings were improper.
 

 1. Failure to Pay Support
 

 ¶ 15 According to § 7505-4.2(B), parental consent is not required when the parent has willfully failed, refused or neglected to contribute to the support of the minor "for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding ... a petition for adoption of a child or a petition to terminate parental rights ... [i]n substantial compliance with an order ... adjudicating the duty, amount, and manner of support; ...." The burden rests with the party that filed the adoption without consent to demonstrate that parental consent is not required.
 
 In re Adoption of K.P.M.A.
 
 , ¶ 13,
 
 341 P.3d at 43
 
 . The statute, strictly applied, requires any failure on Father's part to substantially comply with the support order to occur for twelve consecutive months
 
 and
 
 the failure must also be willful. The statute's "willfulness" and "substantial compliance" terms are discrete provisions this Court will address separately.
 

 ¶ 16 The term "willfully" is understood to modify all verbs in the series that follow the term. Whether the requisite willfulness exists is a fact question to be determined on a case by case basis.
 
 In re Adoption of L.D.S.
 
 ,
 
 2006 OK 80
 
 , ¶ 12,
 
 155 P.3d 1
 
 , 5. A parent's financial ability to pay a support obligation is relevant in determining whether the parent "willfully" failed, refused, or neglected to pay child support.
 
 See
 

 In re Adoption of J.L.H.
 
 , ¶ 14,
 
 737 P.2d at 920
 
 . A parent, financially responsible for child support then, may not be in substantial compliance;
 

 *212
 
 but, at the same time, not willfully so.
 
 In re Adoption of C.D.O.
 
 ,
 
 2002 OK CIV APP 9
 
 , ¶ 16,
 
 39 P.3d 828
 
 , 832. This Court has held previously that the "wilfulness requirement of the statute is intended to prevent an arbitrary application of the statute and a parent's inability to comply with a support order would always be relevant to show an absence of wilfulness."
 
 In re Adoption of D.T.H.
 
 , ¶ 19,
 
 615 P.2d 287
 
 , 291.
 

 ¶ 17 According to COCA, the stipulated evidence presented below led it to conclude that Father's failure to pay was willful and not based on an inability to pay support. COCA, relying on the sparse record and insufficient stipulations, drew the inference that Father's failure to pay was willful based on Father's abrupt change in meeting his support obligation and the sizable payment after the application for adoption was filed. We cannot agree.
 

 ¶ 18 First, for a part of the critical period-the year immediately preceding the filing of the adoption petition-Father tendered 3 support payments. Although the 3 support payments were less than the full amount, there is no clear and convincing evidence that Father had the financial ability to pay support or that he incapacitated himself in order to evade the support obligations.
 

 ¶ 19 Second, the record supports the alternative conclusion that Father's change in meeting his support obligation was not abrupt, as the courts below concluded, but instead consistent with Father's pattern of payments tendered since April 8, 2011. From April 2011 to January 2014, the date immediately preceding the adoption petition, Father tendered payments but at times less than the full amount owed. However in the subsequent months, Father paid larger sums-just as he did in February 2014 when Father tendered the $4,144.44-approximately nine times the monthly amount required.
 

 ¶ 20 Neither the parties' briefs nor the references to the proof contained therein constitute the clear weight of the requisite clear and convincing evidence. Although the parties stipulated to the self-authenticating Department of Human Services's record of payments, that record, standing alone, fails to provide any evidentiary insight into Father's
 
 ability
 
 or
 
 inability
 
 to comply with his support obligation. As stated previously, a parent's ability or inability to provide financial support is always relevant to the issue of willfulness.
 
 In re Adoption of J.L.H.
 
 ,
 
 1987 OK 25
 
 ,
 
 737 P.2d 915
 
 ;
 
 In re Adoption of V.A.J.
 
 ,
 
 1983 OK 23
 
 ,
 
 660 P.2d 139
 
 .
 

 ¶ 21 Absent a showing of an obligor's ability to meet a court-ordered child-support obligation, a record of payments may be sufficient to determine the factual question of whether Father was in substantial compliance with a support order. However, it is insufficient for a clear and convincing determination that Father's nonpayment was due to a willful failure, refusal or neglect in accordance with the § 7505-4.2 terms. Hence, any inference that may be drawn from Father's, albeit "abrupt", change in the discharge of his support obligation without an evidentiary hearing to determine his ability to meet his court-ordered support obligation, does not rise to the level of clear and convincing evidence required-where as here-the fundamental right of a parent-child relationship is implicated. Further, an order that merely recites statutory language and concludes that Father "has not substantially complied within the statutorily contemplated time frame ... which this court finds to be willful," does no more to facilitate a meaningful judicial review than merely stating "petition granted."
 

 ¶ 22 Based on the dearth of evidence, deficient record and irregular proceedings below, the trial court's finding of Father's willful failure, refusal or neglect to contribute to the support of the minor child was not supported by the clear weight of the requisite clear and convincing evidence. Because willfulness was not established by clear and convincing evidence, we need not reach the issue of substantial compliance. The trial court's ruling was in error.
 

 2. Substantial and Positive Relationship
 

 ¶ 23 "A parent's consent to adoption is also not required from a parent who fails to establish and/or maintain a substantial and positive relationship with the minor child,"
 
 In re Adoption of G.D.J.
 
 ,
 
 2011 OK 77
 
 , ¶ 19,
 
 261 P.3d 1159
 
 , 1164-65, "
 
 for ... twelve (12)
 

 *213
 

 consecutive months
 
 out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of a child."
 
 Okla. Stat. tit. 10, § 7505-4.2
 
 (H)(1) (emphasis added). Here, the relevant fourteen month window, from which the twelve consecutive month period is derived, runs between January 6, 2015 and back to November 6, 2013. Section 7505-4.2(H)(3) delineates the "substantial and positive relationship" requirement as either "frequent and regular visitation or frequent and regular communication" between a parent and child, or some other exercise of "parental rights and responsibilities."
 

 ¶ 24 The record indicates that Father had exercised his right to visitation with M.A.S. since October 31, 2008, when the first visitation schedule was entered, until January 6, 2014. On January 8, 2014, Mother obtained an ex parte emergency order suspending Father's visitation. Father conceded that he has not had contact with M.A.S. since the emergency order was entered. Based on the sparse record and Father's concession, Father has failed to maintain a substantial and positive relationship with M.A.S. as defined by the statute from January 8, 2014 to January 6, 2015. However, there exists a two-day gap within the requisite twelve month period-January 6, 2014 to January 8, 2014-where the evidence does not clearly and convincingly establish that Father did not exercise visitation. Notwithstanding Father's concession, the requisite twelve consecutive months of no contact have not been met. Adoption statutes in derogation of a biological parent's rights must be strictly construed in favor of the biological parents.
 
 In re Adoption of C.M.G.
 
 , ¶ 9,
 
 656 P.2d 262
 
 , 265. Strictly construing and applying the statute and the constitutional basis for strict construction, we find that the record does not demonstrate by clear and convincing evidence that there have been twelve consecutive months of no contact between Father and M.A.S.
 

 ¶ 25 Even assuming that the twelve consecutive month requirement was satisfied, Father avers that the emergency order completely prevented his contact with M.A.S.; and therefore, denied him the opportunity to maintain the established father-child relationship he and M.A.S. once enjoyed. Father's evidence consisted of the stipulated litigation time line, listing Mother's request for the emergency order, and the various motions filed by the parties-all of which precedes the notice of hearing on Stepfather's petition for adoption without consent.
 

 ¶ 26 Section 7505-4.2(H)(2) permits a defense to the "establish[ing] and/or maintain[ing] a substantial and positive relationship" requirement. To successfully utilize this defense, the parent must prove that,
 

 prior to the notice of the hearing on the application for adoption without consent, the parent can
 
 prove to the satisfaction of the court
 
 that he or she has
 
 taken sufficient legal action
 
 to establish and/or maintain a substantial and positive relationship with the minor child. Such action is based on the parent being denied the opportunity to have a relationship with the minor child due to the actions of the custodian.
 

 In re Adoption of G.D.J.
 
 , ¶ 19,
 
 261 P.3d at 1165
 
 (emphasis added).
 

 ¶ 27 Mother is the legal custodian of M.A.S. Upon Mother filing the emergency order on January 8, 2014, and for the next five days thereafter, Father was prohibited from "frequent and regular visitation" with M.A.S. as contemplated by the statute. Thereafter, on January 13, 2014, the trial court modified its order to permit limited visitation if certain conditions were met. Beyond this, the record is silent as to any further judicial pronouncements or determinations on the matter. It is patently clear that on two occasions Father attempted to resume visitation with M.A.S. well before the adoption petition was filed. First, when Father filed his motion to modify custody on January 16, 2014, three days after the modified emergency order was entered; and second, when Father filed a motion to enforce visitation on March 6, 2014. Based on the record, the trial court's orders and Father's contentions contained in his motions, this Court concludes that an impediment to the parent-child relationship existed. Clearly, Father had taken legal action, but whether such actions were "sufficient" was the issue before the trial court.
 

 *214
 
 ¶ 28 The provision, proof "to the satisfaction of the Court" requires Father to prove that he took sufficient legal action against a denial of opportunity to maintain a substantial and positive relationship with M.A.S. by the custodian prior to the date of notice of the hearing on the adoption without consent.
 
 In re Adoption of G.D.J.
 
 , ¶ 27,
 
 261 P.3d at 1166-67
 
 . In
 
 Steltzlen v. Fritz
 
 ,
 
 2006 OK 20
 
 ,
 
 134 P.3d 141
 
 , this Court construed an identical provision in the context of a putative father and the discovery of parenthood. In
 
 Steltzlen
 
 , the trial judge found that the father had made a sufficient attempt to determine whether he had fathered a child, out of wedlock, by offering to take a DNA test. ¶ 15,
 
 134 P.3d at 145
 
 . This Court affirmed the trial court's ruling and recognized that the mere offering of a DNA test satisfied the proof "to the satisfaction of the Court" requirement in that case. Here, the record demonstrates that Father pursued visitation and custody by filing motions in a separate action. If volunteering to take a DNA test satisfies the statute, surely Father's motion to modify custody and motion to enforce visitation does as well.
 

 ¶ 29 We reiterate that adoption statutes in derogation of a biological parent's rights must be strictly construed in favor of the biological parent.
 
 In re Adoption of C.M.G.
 
 , ¶ 9,
 
 656 P.2d at 265
 
 . Strictly construing and applying the statute and the constitutional basis for strict construction, we find that the record in this matter does not demonstrate by clear and convincing evidence that Father's visitation and custody filings were insufficient legal actions at maintaining a substantial and positive relationship with M.A.S.
 

 3. The Best Interests of the Child
 

 ¶ 30 "The best interests of the child serve as the polestar in all adoption proceedings."
 
 In re Adoption of M.J.S.
 
 ,
 
 2007 OK 44
 
 , ¶ 30,
 
 162 P.3d 211
 
 , 222. Statutes governing hearings for termination of parental rights and adoption without consent require the trial court to determine that the termination of parental rights or adoption without consent be in the child's best interests.
 
 [6]
 
 In addition to the statutory requirement, this Court requires that any adoption or termination of parental rights promote the child's best interest.
 
 In re Adoption of C.D.M.
 
 , ¶ 22, 39 P.3d at 810. Unlike the statutory grounds for granting adoption without consent, there is no time constraint, or relevant period, for best interests of the child analysis.
 

 ¶ 31 It is incumbent on the trial court to determine whether the adoption would be in the child's best interests prior to declaring the child eligible for adoption.
 
 In re Adoption of C.D.M.
 
 , ¶ 23, 39 P.3d at 810. Here, there is nothing in the record to support the trial court's order finding that the adoption, without Father's consent, was in the child's best interests. Rather, the trial court decided this case on submitted briefs and failed to hold an evidentiary hearing. We hold that the stipulations and allegations within those briefs do not rise to the level of clear and convincing evidence that the adoption, absent Father's consent, would be in M.A.S.'s best interests.
 

 IV. CONCLUSION
 

 ¶ 32 From all we have said thus far, it should be clear that it is imperative that a trial court's grant of an adoption petition without a parent's consent must be supported by clear and convincing evidence. The requisite evidence cannot be demonstrated in a summary proceeding absent an evidentiary hearing. Because granting an adoption petition without parental consent necessarily obviates parental consent, the trial court
 
 shall
 
 have an evidentiary hearing.
 

 ¶ 33 For the reasons discussed herein, we hold that the trial court's August 10, 2015 Order declaring M.A.S. eligible for adoption was not supported by clear and convincing evidence. Accordingly, we reverse the trial court's order, but remand with the instruction to hold an evidentiary hearing to determine Father's ability or inability to comply with the support order and whether any failure on Father's part was willful.
 

 CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION
 

 *215
 
 VACATED; TRIAL COURT ORDER REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 CONCUR: Combs, C.J., Gurich, V.C.J., Edmondson, Colbert, and Reif, JJ.
 

 CONCUR IN RESULT: Kauger, J.
 

 DISSENT: Winchester and Wyrick, JJ.
 

 [1]
 

 The relevant portions of § 7505-4.2 states:
 

 B. Consent to adoption is not required from a parent who, for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of a child or a petition to terminate parental rights pursuant to Section 7505-2.1 of this title, has willfully failed, refused, or neglected to contribute to the support of such minor:
 

 1. In substantial compliance with an order entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support; ...
 

 H. 1. Consent to adoption is not required from a parent who fails to establish and/or maintain a substantial and positive relationship with a minor for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of the child.
 

 2. In any case where a parent of a minor claims that prior to the receipt of notice of the hearing provided for in Sections 7505-2.1 and 7505-4.1 of this title, such parent had been denied the opportunity to establish and/or maintain a substantial and positive relationship with the minor by the custodian of the minor, such parent shall prove to the satisfaction of the court that he or she has taken sufficient legal action to establish and/or maintain a substantial and positive relationship with the minor prior to the receipt of such notice.
 

 3. For purposes of this subsection, "fails to establish and/or maintain a substantial and positive relationship" means the parent:
 

 a. has not maintained frequent and regular contact with the minor through frequent and regular visitation or frequent and regular communication to or with the minor, or
 

 b. has not exercised parental rights and responsibilities.
 

 Okla. Stat. tit. 10.
 

 [2]
 

 The relevant section of Okla. Stat. tit, 10, § 7503-3.2(B)(2011) requires the consolidation of proceedings,
 

 [i]f a proceeding for adoption or for termination of parental rights of the putative father and a paternity action by the putative father regarding the same minor are both pending in the courts of this state, upon motion of any party, the court having jurisdiction over the paternity action shall transfer the paternity proceeding to the court in which the adoption or termination proceeding is pending, whereupon the two proceedings may be considered.
 

 Here, Stepfather's application alleged Mother requested the pending motions and applications be transferred and consolidated with Stepfather's application for adoption in the Sapulpa Division. The record appears incomplete. In addition to requesting that M.A.S be declared eligible for adoption without the Father's consent, Stepfather's application for adoption requests that Father's parental rights be terminated. The record does not contain a petition for adoption. It does contain Father's response to this petition wherein he denies the allegations contained therein.
 

 [3]
 

 On March 16, 2015, Stepfather amended his application but made no substantive changes.
 

 [4]
 

 In
 
 Willis v. Sequoyah House, Inc.
 
 ,
 
 2008 OK 87
 
 , ¶ 12,
 
 194 P.3d 1285
 
 , 1290, this court discussed the four different forms of acceptable proof that may be submitted as evidence, three of which are authorized by statute. Namely-"(1) evidence from oral proceedings by living (viva voce) testimony, (2) by deposition and (3) by affidavit. The fourth was developed by the common law. That form permits in some proceedings the use of acceptable evidentiary substitutes." (internal citations omitted).
 

 [5]
 

 The relevant terms of § 7505-2.1 provide:
 

 A. 1. Prior to the filing of a petition for adoption, a child-placing agency, attorney, or prospective adoptive parent to whom a parent having legal custody has executed a consent to adoption or has permanently relinquished a minor born out of wedlock may file a petition for the termination of the parental rights of a putative father or a parent of the child. The petition shall be filed with the district court of the county in which the relinquishment was executed or in the county in which the putative father, a parent, the petitioner, or the minor resides at the time of the filing of the petition.
 

 2. The affidavit of expenses required by subsection A of Section 7505-3.2 of this title is not required to be attached to a petition filed pursuant to this section, nor must it be filed prior to issuance of an order terminating parental rights entered in a proceeding brought under this section.
 

 B. 1. Notice of the hearing on the petition to terminate parental rights and a copy of the petition shall be served upon such putative father or a parent in the same manner as summons is served in civil cases, not less than fifteen (15) days prior to the hearing.
 

 2. The notice shall contain the name of the putative father or parent, or if unknown, the name of the minor, the date of birth of the minor, the date of the hearing, and the ground or grounds for which termination of parental rights is sought. The notice shall apprise the putative father or parent of his or her legal rights and shall include a clear statement that failure to appear at the hearing shall constitute a denial of interest in the minor which denial may result, without further notice of this proceeding or any subsequent proceeding, in the termination of his or her parental rights and the transfer of the care, custody or guardianship of the minor or in the adoption of the minor.
 

 3. If the identity or whereabouts of a putative father or parent is unknown, the court must determine whether the putative father or parent can be identified or located. Following an inquiry pursuant to Section 7505-4.3 of this title, if the court finds that the identity or whereabouts of the putative father or parent cannot be ascertained, and this fact is attested to by affidavit of the consenting or permanently relinquishing person or the legal custodian or guardian of the child, it shall order that notice be given by publication and, if the identity is known, that a copy be mailed to the last-known address of the putative father or parent. The notice shall be published once pursuant to the laws relating to service of notice by publication, in the county in which the action to terminate parental rights is brought, and the hearing shall not be held for at least fifteen (15) days after publication of the notice. When notice is given by publication, the order terminating parental rights shall not become final for a period of fifteen (15) days from the date of the order.
 

 4. A putative father or parent may waive the right to notice pursuant to this section. The waiver shall be in writing and shall include a statement affirming that the person signing the waiver understands that the waiver shall constitute grounds for the termination of the parental rights of such person pursuant to the provisions of this section and Section 7505-4.2 of this title. A putative father or legal or biological father may also waive his right to notice pursuant to this section, by signing an extrajudicial consent pursuant to Section 7503-2.6 of this title, or by waiving notice on a form filed with the Paternity Registry of the Department of Human Services, or by failing to register with the Paternity Registry of the Department of Human Services after receiving a Notice of Plan for Adoption pursuant to Section 7503-3.1 of this title.
 

 C. When a putative father or parent appears at the hearing and desires counsel but is indigent and cannot for that reason employ counsel, the court shall appoint counsel. In all counties having county indigent defenders, the county indigent defenders shall assume the duties of the representation in such proceedings.
 

 D. At the hearing on the petition to terminate parental rights brought pursuant to this section, the court may, if it is in the best interest of the minor:
 

 1. Accept a permanent relinquishment or consent to adoption executed by the putative father or parent of the minor pursuant to Sections 7503-2.1, 7503-2.3 and 7503-2.4 of this title; or
 

 2. Terminate any parental rights which the putative father or parent may have upon any of the grounds provided in Section 7505-4.2 of this title for declaring a consent unnecessary.
 

 E. 1. If the court at the hearing determines that the putative father is the biological father of the minor, that the adoption requires the consent of the putative father, that the putative father will not consent, and the court does not terminate the parental rights of the putative father or does not terminate the rights of the other parents, then the court shall schedule a separate hearing to issue an appropriate order for the legal and physical custody of the minor according to the best interests of the minor, if the court has jurisdiction to issue a custody order. Provided, no such hearing shall be scheduled if a preexisting custody order remains in effect.
 

 2. The court shall certify that the child-placing agency or the attorney who filed the petition to terminate parental rights, the putative father, the parent, and any prospective adoptive parents have received notice of the date of the custody hearing at least fifteen (15) days prior to the date of the hearing. A parent having legal custody who has signed a consent or permanent relinquishment must be served with notice of the date of the custody hearing, by the party who filed the petition for termination, in the same manner as summons is served in civil cases at least fifteen (15) days prior to the date of the hearing.
 

 3. Upon motion to intervene, the court shall join any person or entity entitled to notice under paragraph 2 of this subsection who is not already a party to the proceeding.
 

 4. At the hearing, the court may award custody to the biological mother, the biological father, the biological parents, if they are married, a parent, the prospective adoptive parent, or the Department of Human Services or other licensed child-placing agency, if the Department or agency had legal custody when the petition was filed, according to Section 21.1 of this title, in the best interests of the child.
 

 5. The child shall be represented at this hearing by an attorney pursuant to Section 7505-1.2 of this title.
 

 F. The court shall terminate the rights of a putative father or parent if the person fails to appear at the hearing on the petition to terminate parental rights or if a waiver of notice pursuant to paragraph 4 of subsection B of this section has been filed with the court.
 

 G. No order of the court shall be vacated, set aside, or annulled upon the application of any person who was properly served with notice in accordance with this section but failed to appear unless the applicant can establish by clear and convincing evidence that such failure to appear was due to unavoidable circumstances. Such application must be filed within ten (10) days of the date of the hearing at which the applicant failed to appear. No order of the court shall be vacated, set aside, or annulled upon the application of any person who waived notice pursuant to paragraph 4 of subsection B of this section.
 

 H. A proceeding pursuant to this section for termination of parental rights shall be heard by the court without a jury.
 

 I. An appeal may be taken from any final order, judgment, or decree rendered pursuant to this section to the Supreme Court by any person aggrieved thereby, in the manner provided for appeals from the court as provided in this subsection.
 

 1. In an appeal concerning the termination of parental rights pursuant to this section, the designation of record by the appellant shall be filed in the trial court within ten (10) days after the date of the judgment. The counter designation of record by the appellee shall be filed in the trial court ten (10) days after designation of record by the appellant is filed in the trial court.
 

 2. All appeals of cases concerning the termination of parental rights pursuant to this section shall be initiated by filing a petition in error in the Supreme Court within thirty (30) days of the filing of the order, judgment, or decree appealed from. The record on appeal shall be completed within thirty (30) days from the filing of the petition in error. Any response to the petition in error shall be filed within twenty (20) days from the filing of the petition in error.
 

 3. The briefing schedule is established as follows:
 

 a. the brief in chief of the appellant shall be filed twenty (20) days after the trial court clerk notifies all parties that the record is complete and such notice has been filed in the office of the Clerk of the Supreme Court,
 

 b. an answer brief of the appellee shall be filed fifteen (15) days after the brief in chief of the appellant is filed, and
 

 c. a reply brief of the appellant may be filed within ten (10) days after the answer brief of the appellee is filed.
 

 J. The pendency of an appeal shall not suspend the order of the district court regarding a minor, nor shall it remove the minor from the custody of that court or of the person, institution, or agency to whose care such minor has been committed, unless the Supreme Court shall so order.
 

 K. Any appeal when docketed should have priority over all cases pending on said docket. Adjudication of the appeals and in any other proceedings concerning the relinquishment of the child or the termination of parental rights pursuant to this section shall be expedited by the Supreme Court.
 

 L. 1. The preadoption termination of parental rights pursuant to this section terminates the parent-child relationship, including the right of the parent to the custody of the child and the right of the parent to visit the child, the right of the parent to control the training and education of the child, the necessity for the parent to consent to the adoption of the child, the right of the parent to the earnings of the child, and the right of the parent to inherit from or through the child. Provided, that this subsection shall not in any way affect the right of the child to inherit from the parent.
 

 2. Termination of parental rights shall not terminate the duty of the putative father or parent whose rights have been terminated to support the child unless the court determines the person is not the parent. The duty of a putative father or parent to support the minor child shall not be terminated until such time as a final decree of adoption has been entered.
 

 Okla. Stat. tit. 10.
 

 [6]
 

 Okla. Stat. tit. 10 §§ 7505-2.1(D) ; 7505-4.1(E) (2001).