IN THE MATTER OF THE ADOPTION OF N.J.B.
2025 OK 8
Case Number: 120729
Decided: 01/28/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 8, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

IN THE MATTER OF THE ADOPTION OF N.J.B., B.R.B, and A.M.B., minor children,

BRITTNEY RAMIREZ, Appellant,
v.
JARED BOEHM and BRANDI BOEHM, Appellees.

APPEAL FROM THE DISTRICT COURT OF GARFIELD COUNTY, 
STATE OF OKLAHOMA, HONORABLE BRIAN N. LOVELL

¶0 The trial court approved an adoption without consent based on mother's failure to comply with an order for child support. A division of the Court of Civil Appeals affirmed that determination, finding federal stimulus monies retained by father should not have been considered when evaluating mother's compliance or non-compliance with the child support order. We granted certiorari and now conclude the trial court's refusal to consider economic stimulus payments, which were received by Father and credited by him to Mother's child support debt, was an abuse of discretion. Additionally, we find the evidence did not support a finding mother had willfully failed, refused, or neglected to pay child support in substantial compliance with a court order for twelve consecutive months out of the fourteen preceding the filing of the adoption petition.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL 
APPEALS DECISION VACATED; TRIAL COURT 
REVERSED AND THE CAUSE REMANDED FOR 
PROCEEDINGS CONSISTENT WITH THIS OPINION.

JUSTIN LAMUNYON, ENID, OK, ATTORNEY FOR APPELLANT

JONATHAN F. BENHAM AND KATRESA J. RIFFEL, ENID, OK, ATTORNEYS FOR APPELLEE 

GURICH, J. 

¶1 On April 1, 2022, Jared and Brandi Boehm jointly filed a petition seeking authorization from the district court for Brandi to legally adopt Jared and Brittney Ramirez's three minor children. Simultaneously, the Boehms filed an application which requested an order determining that the children are eligible for adoption without the consent of their biological mother. As the sole basis for this request, the Boehms alleged "[f]or twelve (12) of the last fourteen (14) months Brittney Ramirez, willfully failed, refused or neglected to contribute to the financial support of the children in compliance with [a prior order of the district court] and according to her financial ability."

FACTUAL & PROCEDURAL HISTORY

¶2 Brittney Ramirez (Mother) is the biological mother of the three minor children whose adoption is the subject of this dispute: N.J.B., born June 13, 2012; B.R.B., born October 11, 2013; and A.M.B., born January 20, 2017. Jared Boehm (Father) is the biological father of B.R.B. and A.M.B. and the legal father of N.J.B. through a decree of adoption entered on December 4, 2015.

¶3 On October 8, 2021, Father married Brandi N. Jenkins, now Brandi N. Boehm (Stepmother). Less than three months later, on January 3, 2022, Father and Stepmother initially filed their joint petition seeking an order permitting Stepmother to adopt N.J.B., B.R.B., and A.M.B.; however, this was dismissed by the petitioners on April 1, 2022. The same day, Father and Stepmother filed a second joint petition to adopt under a separate case number.

¶4 A hearing on the application to allow the adoption to proceed without Mother's consent took place on May 5, 2022. The only witnesses were Mother, Father, and Father's certified public accountant, Misty Taylor. Mother testified that she was employed during the fourteen-month period preceding the petition for adoption. During the time frame, Mother tendered two monthly child support payments in full to Father: (1) a payment in the amount of $50.00 in February 2021 and (2) a check for $100.00 in August 2021. Mother's child support payments were clearly inconsistent; yet she utilized funds for questionable personal expenses during the relevant period.

¶5 Father received an economic stimulus payment

¶6 During his testimony, Father explained that he had provided Mother with a spreadsheet which detailed what he believed were past-due amounts for child support, childcare, and unreimbursed medical expenses. Nevertheless, he only provided Mother with "some" of the receipts corroborating the figures set forth in the spreadsheet. Mother acknowledged that she had a legal responsibility to pay her proportionate share of childcare and out-of-pocket medical expenses. Mother's responsibility for out-of-pocket medical and childcare was sixteen percent (16%), and under the parties' divorce decree, she was allowed forty-five days to repay these amounts after being provided with receipts for the expenses. Other than the summary spreadsheet, none of the receipts for these expenses were made a part of the original record. The following is a recreation of the document prepared by Father:

 
 
 
 Date
 
 
 Child Support
 
 
 Child Support Paid
 
 
 Daycare Expense 
 
 
 Daycare Paid
 
 
 Unreimbursed Medical
 
 
 Medical Expenses Paid
 
 
 Stimulus
 Check
 
 
 Outstanding Balance
 
 
 
 
 Jul-2020
 
 
 $ 50.00 
 
 
 ($ 50.00)
 
 
  
 
 
  
 
 
 $ 48.00 
 
 
  
 
 
  
 
 
 $ 48.00 
 
 
 
 
 Aug-2020
 
 
 $ 50.00
 
 
 ($ 50.00)
 
 
 $ 196.80 
 
 
  
 
 
 $ 30.88 
 
 
  
 
 
  
 
 
 $ 275.68 
 
 
 
 
 Sep-2020
 
 
 $ 50.00
 
 
 ($ 50.00)
 
 
 $ 164.80 
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 $ 440.48 
 
 
 
 
 Oct-2020
 
 
 $ 50.00
 
 
 ($ 50.00)
 
 
 $ 184.64 
 
 
  
 
 
 $ 96.96 
 
 
  
 
 
  
 
 
 $ 722.08 
 
 
 
 
 Nov-2020
 
 
 $ 50.00
 
 
  
 
 
 $ 176.67 
 
 
  
 
 
 $ 4.52 
 
 
  
 
 
  
 
 
 $ 953.27 
 
 
 
 
 Dec-2020
 
 
 $ 50.00
 
 
  
 
 
 $ 160.60 
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 $ 1,163.87 
 
 
 
 
 Jan-2021
 
 
 $ 50.00
 
 
  
 
 
 $ 96.00 
 
 
  
 
 
 $ 76.60 
 
 
  
 
 
 ($ 600.00) 
 
 
 $ 786.47 
 
 
 
 
 Feb-2021
 
 
 $ 50.00
 
 
 ($ 50.00)
 
 
 $ 96.00 
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 $ 882.00 
 
 
 
 
 Mar-2021
 
 
 $ 50.00
 
 
  
 
 
 $ 96.00 
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 $ 1,028.00 
 
 
 
 
 Apr-2021
 
 
 $ 50.00
 
 
  
 
 
 $ 96.00 
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 $ 1,174.47 
 
 
 
 
 May-2021
 
 
 $ 50.00
 
 
  
 
 
 $ 96.00 
 
 
  
 
 
 $ 4.80 
 
 
  
 
 
  
 
 
 $ 1,325.27 
 
 
 
 
 Jun-2021
 
 
 $ 50.00
 
 
  
 
 
  
 
 
  
 
 
 $ 57.60 
 
 
  
 
 
  
 
 
 $ 1,423.87 
 
 
 
 
 Jul-2021
 
 
 $ 50.00
 
 
  
 
 
  
 
 
  
 
 
 $ 65.51 
 
 
  
 
 
  
 
 
 $ 1,548.38 
 
 
 
 
 Aug-2021
 
 
 $ 50.00
 
 
 ($100.00) 
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 $ 1,498.38 
 
 
 
 
 Sep-2021
 
 
 $ 50.00
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 $ 1,548.38 
 
 
 
 
 Oct-2021
 
 
 $ 50.00
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 $ 1,598.38 
 
 
 
 
 Nov-2021
 
 
 $ 50.00
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 $ 1,648.38 
 
 
 
 
 Dec-2021
 
 
 $ 50.00
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 $ 1,698.38 
 
 
 

Father and Stepmother did not provide any additional information pertaining to childcare or medical expenses incurred between December 2021 and April 1, 2022, when the petition for adoption was filed.

¶7 After hearing brief testimony from each witness, the trial judge determined the Petitioners had met their burden and declared all three minor children eligible for adoption without Mother's consent. Notably, the trial judge proclaimed, "I don't think the stimulus is child support, nor did it stimulate the economy."

¶8 A second hearing was held to address whether adoption by Stepmother would be in the children's best interest. During testimony on August 24, 2022, Father admitted that he had credited the $1,400.00 stimulus payment to Mother's past-due child support, childcare, and unpaid medical expenses. Conveniently, he decided to apply the stimulus money to Mother's child support three days after the trial judge's decision on the application to allow adoption without consent. The trial judge found adoption would be in the best interest of the minor children, and a final decree of adoption was approved by the trial court on September 27, 2022.

¶9 In a split decision, the COCA affirmed all three orders. Relevant to this appeal, the COCA found that stimulus monies were properly excluded from consideration when evaluating Mother's compliance the underlying child support order. Mother sought a writ of certiorari, arguing that the issues presented a first impression question. We granted a writ of certiorari to consider this unique dispute and now reverse and remand to the trial court.

STANDARD OF REVIEW

¶10 This appeal requires us to determine whether the trial judge erroneously sustained Father and Stepmother's application to allow adoption of N.J.B., B.R.B., and A.M.B. without Mother's consent. Specifically, Mother argues the petitioners failed to present clear and convincing evidence to support their application. More specifically, we must decide whether the trial court properly declined to consider Mother's portion of a federal stimulus check received by Father in connection with the parties' 2019 income tax return.

¶11 First and foremost, it is essential to reiterate that under the Oklahoma and United States Constitutions, a parent has a vested fundamental right to the care, custody and companionship of their children. Matter of Adoption of M.A.S., 2018 OK 1419 P.3d 204Id. However, these statutes are to be strictly construed in favor of biological parents opposing an adoption without their consent. Id. ¶ 11, 419 P.3d at 208. We will examine the record on appeal to determine if a lower court decision finding a minor child or children eligible for adoption without consent is supported by clear and convincing evidence. Id. ¶ 12, 419 P.3d at 209. We review questions of law by applying a de novo standard of review. Id.

ANALYSIS

¶12 The principal focus of this appeal is whether federal stimulus payments received by Father, a portion of those funds which were paid because of Mother's inclusion on the parties' joint federal tax return, should have been considered by the trial court when evaluating Mother's compliance with the underlying child support order. Additionally, we must examine the record and decide if it contains clear and convincing evidence that Mother failed to substantially comply with the relevant child support order for twelve consecutive months out of the fourteen months immediately preceding the adoption petition.

¶13 Petitioners relied on 10 O.S.2021, § 7505-4.2(B) as their sole basis for seeking an adoption without Mother's consent. The provision reads in relevant part:

B. Consent to adoption is not required from a parent who, for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of a child or a petition to terminate parental rights pursuant to Section 7505-2.1 of this title, has willfully failed, refused, or neglected to contribute to the support of such minor:

1. In substantial compliance with an order entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support; or

2. According to such parent's financial ability to contribute to such minor's support if no provision for support is provided in an order. For the purposes of this section, support for the minor shall benefit the minor by providing a necessity. Payments that shall not be considered support shall include, but are not limited to:

a. genetic and drug testing,
b. supervised visitation,
c. counseling for any person other than the minor,
d. court fees and costs,
e. restitution payments, and
f. transportation costs for any person other than the minor, unless such transportation expenses are specifically ordered in lieu of support in a court order.

The incarceration of a parent in and of itself shall not prevent the adoption of a minor without consent.

10 O.S.2021, § 7505-4.2 (emphasis added). As noted before, we must strictly construe Section 7505-4.2(B) in favor of Mother. Thus, the Petitioners were required to establish that Mother failed to substantially comply with the child support order for twelve consecutive months out of the fourteen months immediately preceding the adoption petition and that such nonpayment was willful. See Matter of Adoption of M.A.S., 2018 OK 1419 P.3d 204and the failure must also be willful.") (emphasis in original).

¶14 A party requesting a court order allowing an adoption without consent must prove by clear and convincing evidence that one or more of the statutory criteria have been met. Id. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established." Id. In approximately January 2021, Father credited Mother with a $600.00 payment based on a federal stimulus check paid directly to Father's account. Although this sum was received prior to the fourteen-month lookback period, Mother testified that she believed the sum should have been credited to her future child support obligations. While Father certainly has a legitimate claim that the $600.00 should first be applied to unpaid childcare and medical expenses, the amount of those unpaid obligations was contested. The undisputed evidence also reflects Mother paid $50.00 in February 2021 and $100.00 in August 2021 toward her child support obligation. Finally, Father received another large federal stimulus payment in March 2021, $1,400.00 of which was attributable to Mother based on the parties' 2019 federal income tax return. Mother requested the stimulus monies be credited to child support and childcare in the parents' divorce case. Father declined to tender or credit any portion of the money to Mother until three days after the adoption without consent hearing. Had the $1,400.00 stimulus check been applied to Mother's child support obligation when received, Mother would have been current or nearly current on base child support, childcare, and unpaid medical expenses.

¶15 Our case law supports the determination that any economic stimulus payments connected to Mother's social security number on the parties' joint tax return, which were received and credited by Father, should have been considered by the trial court when evaluating the application to allow adoption without consent in this case. We have previously found that social security disability insurance (SSDI) payments made to a child because of a parent's disability should be applied as an offset to an outstanding child support debt. Merritt v. Merritt, 2003 OK 6873 P.3d 878Merritt, the father was awarded sole custody of a minor child and the mother was ordered to pay child support of $120.00 per month. Several years later, the father initiated a contempt application against mother for unpaid child support. Although the mother had not been making monthly child support payments, during pendency of the contempt matter, the Social Security Administration made a lump sum payment directly to the child and began paying the child monthly SSDI benefits. These amounts exceeded the mother's monthly child support obligation. The trial court sustained mother's motion to dismiss the contempt proceeding and the COCA reversed, finding the SSDI payments did not extinguish the unpaid child support debt. We granted certiorari and reinstated the trial court's judgment on alternative grounds, finding "[i]n the case before us, Social Security benefits have been paid for child support. The amount paid was in excess of that owed as an arrearage. The mother is entitled to credit for that payment." Id.

¶16 We believe the same rationale used in Merritt should be extended to the economic stimulus payments in this case. Although there are no prior Oklahoma decisions addressing the application of stimulus monies to satisfy a child support debt, the trial court should have considered those funds when weighing the application in this case. The stimulus payments were calculated based on the number of adult taxpayers and dependents on each return filed. See 26 U.S.C. § 6428(a), 26 U.S.C. § 6428A(a), and 26 U.S.C. § 6428B(b). As explained by Father's CPA, the money received by Father in March 2021 was based on the parties' joint 2019 federal tax return, thus a portion of the funds were clearly attributable to Mother's taxpayer identification number. Father's receipt of the stimulus monies, along with his history of crediting Mother's child support with those funds, should have been considered by the trial court in determining whether there had been willful nonpayment of child support under 10 O.S.2021, § 7505-4.2. The economic stimulus monies were nothing more than a source of disposable income for recipients of the funds. Nothing would have limited Mother from using her share of those funds to pay back child support. If those funds had been credited to Mother before the hearing on Petitioners' application, she undoubtedly would have been in substantial compliance with the underlying child support order for the entire fourteen-month period. Regardless, the record does not establish twelve consecutive months of willful non-payment of child support in accordance with the parties' decree of dissolution.

¶17 The paramount consideration in any adoption proceeding is the best interest of a child. 10 O.S.2021, § 7501-1.2(A)(1); In re Adoption of C.D.M., 2001 OK 10339 P.3d 802Murrell v. Cox, 2009 OK 93226 P.3d 692Id.

¶18 When this evidence is viewed in light of the constitutional mandates protecting parental rights, it is clear: (a) any failure to pay monthly child support was not willful based on Father's receipt of stimulus monies, which he applied to Mother's child support debt on two occasions; (b) combining the stimulus payments and actual child support payments made during the twelve-month period, there was not clear and convincing evidence supporting the trial court's order allowing adoption without consent; and (c) even if the stimulus payments are excluded from consideration, the record does not reflect twelve consecutive months of substantial non-compliance during the relevant period.

CONCLUSION

¶19 The trial court's decision to not consider economic stimulus payments, which were received by Father and credited by him to Mother's child support debt, was an abuse of discretion. These sums should have been included in the determination of whether Mother willfully failed to substantially comply with the child support order for twelve consecutive months out of the fourteen months preceding the adoption petition. Accordingly, the order allowing Stepmother to adopt N.J.B., B.R.B, and A.M.B. without Mother's consent is reversed. Because we reverse the trial court's decision on this basis, there is no need to consider the trial court's order of September 8, 2022, finding allowing the adoption without consent to be in the best interest of the children. Consequently, the Final Decree of Adoption and the subsequent Order Nunc Pro Tunc are also reversed.

¶20 For the reasons set forth herein, the trial court's orders, filed May 5, 2022, September 8, 2022, and September 27, 2022, are reversed, and the matter is remanded with instructions for the trial court to enter an order denying the application to allow adoption without consent.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL
APPEALS DECISION VACATED; TRIAL COURT 
REVERSED AND THE CAUSE REMANDED FOR 
PROCEEDINGS CONSISTENT WITH THIS OPINION.

CONCUR: ROWE, C.J., WINCHESTER, EDMONDSON, COMBS, AND GURICH, JJ.

DISSENT: KUEHN, V.C.J. (by separate writing), DARBY, KANE, JJ.

 

 

KUEHN, V.C.J., with whom KANE, J., joins, DISSENTING:

I dissent, as I would affirm the Court of Civil Appeals.

FOOTNOTES

12 O.S.2021, § 2202Green v. Mac's Plating Works, 1977 OK 71563 P.2d 148

In re Adoption of M.A.R., 2009 OK CIV APP 103229 P.3d 545In re Adoption of C.D.O., 2002 OK CIV APP 939 P.3d 828